**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Anthony CAICEDO (95–3242); William
A. Ryan (95–3513), Defendants–
Appellants.**

**Nos. 95–3242, 95–3513.**

United States Court of Appeals,
Sixth Circuit.

Argued March 18, 1996.

Decided June 6, 1996.

William E. Hunt (argued and briefed), Office of the U.S. Attorney, Cincinnati, OH, for Plaintiff-Appellee.

Mark B. Weisser (argued and briefed), Cincinnati, OH, for Defendant-Appellant Anthony Caicedo.

Harry P. Hellings, Jr. (argued and briefed), Hellings & Pisacano, Covington, KY, for Defendant-Appellant William A. Ryan.

Before: LIVELY, MARTIN, and MOORE, Circuit Judges.

LIVELY, Circuit Judge.

The principal question in this case is whether subsequent actions of police officers converted what began as a consensual encounter into unlawful "seizures" of two individuals under the Fourth Amendment. The search for an answer to this question requires a rather detailed statement of facts related to the entire encounter.

## I.

### A.

On August 11, 1994, Officer John E. Mercado of the Cincinnati, Ohio police force was assigned to drug interdiction duty at the Greyhound Bus Terminal in Cincinnati. He was in full uniform and was armed. Officer Mercado testified[1] that he noticed a bus passenger, later identified to be the defendant Anthony Caicedo, "wading through the crowd" while still on a bus that had just arrived at the station in an effort to move quickly to the front of the bus. Caicedo made eye contact with Officer Mercado as he was leaving the bus, "jerked" as if startled, broke eye contact and then alighted from the bus. Caicedo walked "briskly" past the officer toward the front entrance of the terminal, "clenching" his hands around the shoul-

der straps of his backpack. According to Mercado, Caicedo was "shaking" and "looked over his shoulder numerous times."

Officer Mercado followed Caicedo, who was still walking rapidly, into the parking lot, where the defendant William Ryan was waiting in the driver's seat of a parked car with the engine running. Caicedo walked directly to the car. As Caicedo stepped into the vehicle, Ryan looked up from the steering wheel and made eye contact with Officer Mercado. Ryan's eyes widened and his jaw dropped, and he put the car in motion before Caicedo had fully seated himself and closed the passenger side door. As Ryan drove toward the parking lot exit, he passed Officer Mercado, who leaned toward Ryan's open window and asked something to the effect of "[d]o you mind if I talk to you for a minute?" Ryan apparently said he did not mind and stopped the car, leaving the engine running. Mercado testified that Ryan then "slumped his shoulders and dropped his head in a sighing motion."

The officer walked closer to the vehicle and said, "I work for the narcotics unit; do you mind if I talk to yourself and the passenger?" Both Ryan and Caicedo nodded and said "yes." Then, without any prompting, Caicedo got out of the car, "threw" his backpack onto the front passenger seat and walked toward the rear of the car. He continued to behave nervously. Officer Mercado met Caicedo at the rear of the car and again identified himself as a narcotics investigator.

When asked, Caicedo admitted the backpack in the front seat was his, whereupon Officer Mercado obtained Caicedo's consent to search the backpack. At some point, Mercado conducted a pat-down search of Caicedo. The pat-down search produced nothing, but the search of the backpack uncovered a purse wrapped in plastic containing what appeared to be blocks of cocaine. While Officer Mercado was going through the contents of the backpack, Caicedo put each item back into the bag as soon as the officer had examined it. Caicedo told the officer that he was

1. The district court found that many of the officer's statements at the suppression hearing were undisputed. Where there was a conflict, the court found Mercado credible and discounted Caicedo's version. Ryan did not testify. At oral argument Caicedo's attorney stated that he was not taking issue with any credibility determinations.

coming from New York, that he was on his way to visit his girlfriend and that his girlfriend had asked Ryan to pick him up at the station. Officer Mercado was not certain whether the pat down occurred before or after the cocaine was discovered.

While Officer Mercado was searching the backpack, Agent Sweeny and Sergeant Michael J. Bogenschutz approached the vehicle to provide assistance. Agent Sweeny, with the help of his narcotics dog, confirmed the presence of narcotics. Officer Mercado placed Caicedo under arrest, handcuffed him and advised him of his *Miranda* rights.

Meanwhile, Sergeant Bogenschutz spoke with Ryan, who was still in the driver's seat. According to Bogenschutz's testimony, Bogenschutz asked Ryan if he could speak with him, and Ryan answered in the affirmative. Further questioning prompted Ryan to state that he was at the terminal to meet Caicedo, that they were driving to the house of Caicedo's brother, that he knew only that the house was located on Corbly Road and that Caicedo was to provide him with the necessary directions. Ryan also told Sergeant Bogenschutz that his former girlfriend, then Caicedo's girlfriend, had asked him to pick Caicedo up at the bus terminal. Bogenschutz said Ryan would not make eye contact with him during the interview, answered his questions very slowly and appeared "somewhat nervous." At the request of his colleagues, who had just discovered the cocaine, Sergeant Bogenschutz placed Ryan under arrest and handcuffed him. Ryan was advised of his *Miranda* rights when he arrived in custody at the police station.

Based on an affidavit prepared by Sergeant Bogenschutz, a state judge issued a search warrant for Ryan's residence on Duck Creek Road in Cincinnati. In executing the warrant, police found incriminating evidence linking Ryan to drug trafficking and financial transactions with Caicedo.

### B.

Each defendant was indicted by a federal grand jury for a single count of possession with the intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) and 18 U.S.C. § 2.

Both defendants moved to suppress the evidence and statements obtained as a result of the August 11, 1994, encounter with Officer Mercado on Fourth Amendment grounds. Ryan also sought to suppress evidence obtained from the search of his apartment. After a hearing, the district court concluded that Officer Mercado's encounter with the defendants was consensual and did not become a seizure subject to Fourth Amendment protections until after the drugs were discovered and the defendants were arrested. With respect to the arrest of Ryan, the court found that evidence of Ryan's nervousness and the subsequent discovery of contraband provided probable cause to arrest Ryan without a warrant. Furthermore, the court held that the affidavit drafted by Sergeant Bogenschutz provided a sufficient basis to find probable cause for a warrant to search Ryan's residence. The district court also noted that even if the warrant had been defective, the evidence found at Ryan's residence was obtained through good faith reliance on a facially valid warrant. Accordingly, the court denied the defendants' motions to suppress.

Following the court's ruling, the defendants entered conditional pleas of guilty, reserving their right to appeal the denial of their suppression motions.

### II.

 In reviewing a district court's ruling on a motion to suppress, we will accept the court's factual findings unless clearly erroneous, and we consider its legal conclusions de novo. *United States v. Dotson*, 49 F.3d 227, 229 (6th Cir.) (citations omitted), *cert. denied*, —— U.S. ——, 116 S.Ct. 141, 133 L.Ed.2d 87 (1995). In our review of the court's findings of fact, we will consider the evidence in the light most favorable to the government. *United States v. Buchanon*, 72 F.3d 1217, 1223 (6th Cir.1995) (citing *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir.1993)).

### A.

 At two places in the order denying Caicedo's motion to suppress evidence, the district court` stated that Officer Mercado patted Caicedo down *after* Caicedo had given consent to search his backpack. See J.A. at 66 ("After the defendant had given consent to the search, Officer Mercado patted down the defendant."); J.A. at 69 ("It was a reasonable exercise of official authority for Officer Mercado for his own safety to pat down the defendant to discover if he had a weapon after defendant consented to the search but before he began the search."). As noted, however, Officer Mercado testified that he could not remember exactly when he performed the pat-down search. The only other testimony regarding the time of this search came from Caicedo who stated that Mercado "put his hand" and started searching him when he left the car and before any discussion concerning the backpack. There was no evidence to support the district court's finding as to when the pat down occurred, and therefore, the finding that the pat down occurred after Caicedo gave consent to the backpack search was clearly erroneous.

### B.

 The government had the burden of proving that Caicedo voluntarily gave his consent to be patted down. *Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 248, 93 S.Ct. 2041, 2045, 2058, 36 L.Ed.2d 854 (1973); *Bumper v. North Carolina,* 391 U.S. 543, 548–49, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968). Here, the district court assumed that Caicedo voluntarily consented to a search of his backpack before the pat down took place. Inasmuch as the government's only witness to the encounter was unable even to state when the pat down took place, the court could find consent to that action by Officer Mercado only if other evidence supported a finding that Caicedo did so consent. There is no other evidence bearing on this question. Therefore, we find that the pat down was made without Caicedo's consent, and Caicedo was "seized" within the meaning of the Fourth Amendment.

### III.

### A.

 Next, our inquiry turns to whether Caicedo's seizure was constitutionally permissible. It is well-established that "police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (citing *Terry,* 392 U.S. at 30, 88 S.Ct. at 1884). Police are also entitled to pat down the outer layers of a person's clothing if they have reason to believe they are dealing with "an armed and dangerous individual, regardless of whether [they] ha[ve] probable cause to arrest the individual." *Id.* In evaluating whether there is "reasonable suspicion" to justify a stop, we must consider the totality of the circumstances. *Sokolow,* 490 U.S. at 8, 109 S.Ct. at 1586.

We have held that each case such as this must be decided on the basis of the facts disclosed by the evidence received at a hearing. There is no single factor that is common to all drug interdiction encounters at locations such as airports and bus stations. See *United States v. Williams,* 754 F.2d 672, 676 (6th Cir.1985). In fact, very small differences in scenarios can lead to opposite conclusions. *E.g.,* compare *United States v. Taylor,* 917 F.2d 1402 (6th Cir.1990), with *United States v. Rose,* 889 F.2d 1490 (6th Cir.1989). The *Taylor* and *Rose* cases had several facts in common, yet there were sufficient differences in "the totality of the circumstances" for the courts to reach different answers to the question whether an unlawful seizure occurred.

The Supreme Court has stated that "[t]he idea that an assessment of the whole picture must yield a particularized suspicion [of illegal activity by the person ultimately detained] contains two elements, each of which must be present before a stop is permissible." *United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). The Court described the two elements as (1) an assessment "based upon all

of the circumstances," which yields (2) a "particularized suspicion" that the particular individual is engaged in wrongdoing. *Id.* The Court applied this two-step assessment to "a stop" in *Cortez.* Inasmuch as the initial conversations with the defendants were consensual in the present case, the prescribed assessment is applied here to Mercado's observations leading up to the pat-down search.

**B.**

■ A careful reading of the record reveals that prior to requesting Ryan to stop the car and asking Caicedo and Ryan if he could speak to them, Officer Mercado relied principally on the defendants' nervous reactions to his presence. On cross-examination, Mercado testified that he did not know where the bus had come from, that he had not been trained in drug courier profiles and that he did not target Caicedo because Caicedo is Hispanic. On the other hand, the officer testified that he had been trained to observe an individual's reaction when a police officer shows an interest in that person, and that both Caicedo and Ryan exhibited extreme nervousness upon seeing him and being asked about their activities. Although nervousness in the presence of a uniformed and armed police officer may be a completely innocent reaction, the Supreme Court has directed courts to consider even innocent facts to determine whether, when taken together, they amount to reasonable suspicion. *Sokolow,* 490 U.S. at 9–10, 109 S.Ct. at 1586–87.

**C.**

■ The only evidence revealed during the encounter in the parking lot that reached the level of probable cause to arrest Caicedo was the cocaine discovered in the backpack. If Caicedo was unlawfully seized before he gave consent to search the backpack, the seizure vitiated that consent. *Florida v. Royer,* 460 U.S. 491, 501, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983) (opinion of White, J.); *United States v. Grant,* 920 F.2d 376, 388 (6th Cir.1990). The discovery of the cocaine would be "fruit of the poisonous tree" because there was no "act of free will to purge the primary taint of the unlawful inva-

sion." *Wong Sun v. United States,* 371 U.S. 471, 486, 83 S.Ct. 407, 416–17, 9 L.Ed.2d 441 (1963). In fact, by all accounts there was a very brief lapse of time between the pat-down search and the search of the backpack during which nothing of significance occurred. See *United States v. Buchanan,* 904 F.2d 349, 356 (6th Cir.1990) ("[d]issipation of the taint resulting from an [illegality] ordinarily involves showing that there was some significant intervening time, space or event.")

We conclude that the district court should have suppressed the cocaine discovered in the search of the backpack because Caicedo was unlawfully seized prior to giving his consent for that search. Our "assessment of the whole picture," *Cortez,* 449 U.S. at 418, 101 S.Ct. at 695, leads us to believe that Officer Mercado did not have a particularized suspicion that Caicedo was engaged in illegal activity prior to the pat down. Nervousness, "in isolation," does not meet the requirement of "reasonable and articulable suspicion." See *United States v. Knox,* 839 F.2d 285, 290 (6th Cir.1988), *cert. denied,* 490 U.S. 1019, 109 S.Ct. 1742, 104 L.Ed.2d 179 (1989). Here, Officer Mercado disavowed any other bases for detaining Caicedo—it was nervousness alone that aroused his suspicion.

**IV.**

We consider Ryan's arguments separately.

**A.**

■ On appeal, Ryan also claims he was illegally detained, and apparently seeks to suppress evidence of the cocaine as against himself under the exclusionary rule. Ryan did not testify at the hearing. His counsel maintains in his appellate brief that Caicedo did not leave the car without prompting, as the district court found, but rather was asked to step out by Officer Mercado. At that point, counsel argues, a reasonable person in Ryan's position would not have felt free to leave; therefore, Ryan had been "seized" such that reasonable suspicion was required to detain him.

In the face of conflicting testimony, we will not disturb the district court's finding that Caicedo got out of the car on his own and not

at the behest of Officer Mercado. *Garcia,* 866 F.2d at 151–52 ("swearing contest" between witnesses more appropriately resolved by the district court); *Winfrey,* 915 F.2d at 218 (district court's conclusion adequately supported by the evidence where the court accepted the testimony of an officer over the defendant's testimony). In any event, the record shows that Ryan was free to decline to answer the officer's questions at any time, regardless of whether his companion was asked to get out of the car or whether he did not feel free to leave the scene physically without his companion. See *Bostick,* 501 U.S. at 435–36, 439, 111 S.Ct. at 2386–87, 2388. Testimony established that Officer Mercado asked for permission to speak to either Ryan or his passenger as Ryan drove toward the exit, and that Ryan voluntarily stopped the car. Sergeant Bogenschutz also obtained Ryan's permission before asking him any questions, and Ryan responded to the questioning in a cooperative and polite manner. At no time did the officers touch or try to intimidate Ryan. Under *Bostick,* Ryan's encounter with the officers prior to the discovery of the cocaine was simply not a seizure.

█ Without having suffered a violation of his own Fourth Amendment rights, Ryan may not vicariously assert the Fourth Amendment rights of Caicedo. *Rakas v. Illinois,* 439 U.S. 128, 133–34, 99 S.Ct. 421, 425–26, 58 L.Ed.2d 387 (1978) (citations omitted). In *Wong Sun,* heroin surrendered by defendant Yee was suppressed as against defendant Toy because it was the exploitation of the illegal arrest of Toy which led directly to the discovery of Yee and the heroin. *Wong Sun,* 371 U.S. at 487–88, 83 S.Ct. at 417–18. In contrast, the same heroin was admissible against a third defendant, Wong Sun, since the seizure of the heroin did not violate any constitutional rights of Wong Sun. *Id.* at 491–92, 83 S.Ct. at 419–20. Thereafter in *Rakas,* the Supreme Court explained:

> A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed. *Alderman [v. United States,* 394 U.S. 165, 174, 89 S.Ct. 961, 966, 22 L.Ed.2d 176 (1969) ].
> And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, *United States v. Calandra,* 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974), it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections. See *Simmons v. United States,* [390 U.S. 377, 389, 88 S.Ct. 967, 973, 19 L.Ed.2d 1247 (1968) ].

*Rakas,* 439 U.S. at 134, 99 S.Ct. at 425.

Here, we have concluded that Ryan's Fourth Amendment rights were never implicated until his arrest. As explained above, only Caicedo's constitutional rights were violated by Mercado, and it is only Caicedo who may properly object to the use of evidence tainted by this potential illegality against him. *Wong Sun,* 371 U.S. at 492, 83 S.Ct. at 419. In any event, counsel for Ryan acknowledged Ryan's inability to challenge the admissibility of the cocaine before the district court:

[COUNSEL]: Just briefly.

> Judge, I think it's important that, and I don't know if my memorandum is quite clear or not, but I am not attempting to suppress the contents of Caicedo's bag because I don't think that Ryan has an expectation of privacy in the contents of that bag, nor does he have standing to contest the search of that bag. That's the first thing I want to make perfectly clear.

THE COURT: I understood that ...

[COUNSEL]: What I'm complaining about is the statements and corroborative evidence that were obtained as a result of Ryan's arrest. That's what I'm concerned about.

Ryan cannot now change his position and assert a "fruit of the poisonous tree" argument to suppress the cocaine. Therefore, the contraband found in Caicedo's backpack need not be suppressed as against Ryan.

## B.

In its order denying Ryan's motion to suppress, the district court found that probable cause existed for a warrantless arrest of Ryan, given the discovery of contraband in his passenger's backpack and the fact that "Officer Mercado watched [Caicedo] proceed directly to Ryan's car as if it were part of a plan, saw that Ryan appeared shaken when he saw the uniformed officer observing him and began to drive away prior to the passenger door being closed." The court concluded that "[t]hese observations suggested that Ryan probably knew what business the defendants were pursuing and that this was more than mere association." *Id.* Ryan continues to maintain on appeal that his nervousness and mere propinquity to Caicedo were insufficient grounds to justify his arrest, citing *Sibron v. State of New York*, 392 U.S. 40, 62–63, 88 S.Ct. 1889, 1902–03, 20 L.Ed.2d 917 (1968) and *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238 (1979). The facts and circumstances leading up to his arrest, he argues, would not lead a reasonable person to believe that Ryan had knowledge of Caicedo's "illicit cargo." Therefore, he contends that his arrest was illegal and that all statements he made to police following his arrest should be suppressed as a product of that illegality. We disagree. The facts leading up to the arrest of Ryan suggest much more than "mere propinquity" to a criminal suspect.

Police may arrest a person without a warrant if they have probable cause at the time of the arrest to believe that the person has committed or is committing a crime. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *United States v. Sangineto–Miranda*, 859 F.2d 1501, 1508 (6th Cir.1988). Probable cause is a standard more stringent than reasonable suspicion, see *United States v. Braggs*, 23 F.3d 1047, 1049 (6th Cir.), *cert. denied*, — U.S. —, 115 S.Ct. 274, 130 L.Ed.2d 191 (1994), but does not require any showing that the officer's suspicions prove to be correct or that they are more likely true than false. *Sangineto*, 859 F.2d at 1508 (citing *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983)). The determination of whether association with a person carrying "illicit cargo" provides sufficient probable cause for arrest is fact-specific.

Ryan's arrest occurred after the cocaine was discovered and after Mercado had observed Ryan's cohort make a "beeline" to his car, his apparent haste to leave the parking lot upon sighting Mercado and his nervousness in talking with Sergeant Bogenschutz. Once Mercado discovered the cocaine, the officers clearly had probable cause to arrest Ryan without a warrant as an aider and abettor in Caicedo's criminal activity. Because probable cause is largely an "assessment of probabilities," *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983), given the facts recited above we are not prepared to reverse the district court's determination of probable cause. Ryan's statements to police following his arrest and *Miranda* warnings therefore need not be suppressed.

## C.

Lastly, we will examine the question of whether the search warrant for Ryan's residence was supported by probable cause. Probable cause to search has been defined as a "fair probability" that contraband or other evidence of a crime will be found in the place cited. *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332. The issuing judge or magistrate "may give considerable weight to 'the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found' and is 'entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense.'" *United States v. Lawson*, 999 F.2d 985, 987 (6th Cir.) (quoting *United States v. Fannin*, 817 F.2d 1379, 1382 (9th Cir.1987) and *United States v. Angulo–Lopez*, 791 F.2d 1394, 1399 (9th Cir.1986)), *cert. denied*, — U.S. —, 114 S.Ct. 574, 126 L.Ed.2d 473 (1993). The determination by the issuing judicial officer is entitled to "great deference" by the reviewing court and should be scrutinized in a "realistic and common sense" manner. *United States v. Algie*, 721 F.2d 1039, 1041 (6th Cir.1983). Our review of the determination must consider the totality of

the circumstances. *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332.

Ryan argues that the affidavit offered by Sergeant Bogenschutz does not support a belief that contraband or evidence would be found at Ryan's home. He takes particular issue with the eighth and ninth paragraphs of the affidavit as demonstrating too much uncertainty on the part of the affiant. Paragraph eight stated that Ryan attempted to conceal his correct address from police, and that "the reason for hiding the correct residence *could be* that further evidence *may be* located at this location which *could be* used against Ryan in this particular investigation." Paragraph nine also stated several times that Bogenschutz believed evidence *may be* found at Ryan's residence.

Despite the affidavit's use of "could be" and "may be," the affidavit established that Sergeant Bogenschutz, the affiant, had 15 years' experience in law enforcement generally and at least seven years' experience specifically in narcotics investigations. The affidavit also attested to the fact that from Bogenschutz's experience, "many drug traffickers utilize their homes to conduct their illegal narcotics trafficking activities ...," and it listed several items drug traffickers were likely to keep at their residences. The affidavit further established Bogenschutz knew Ryan was arrested in connection with his companion's possession of 565 grams of cocaine and that Ryan had lied about his address in statements subsequent to his arrest. Under the totality of the circumstances, we find it was reasonable to defer to the attesting officer's expertise and that the affidavit adequately established probable cause to search. See *Fannin*, 817 F.2d at 1382. The district court's ruling on Ryan's motion to suppress is therefore affirmed.

The decision of the district court denying the defendants' motions to suppress is **AFFIRMED** as to Ryan and **REVERSED** as to Caicedo.