OPINION
Defendants Richard H. Chu and Cheuk L. Fung each appeal from their convictions in the Common Pleas Court for one count of engaging in a pattern of corrupt activity, R.C. 2923.32; seven counts of forgery, R.C. 2913.31; seven counts of uttering, R.C.2913.31; three counts of theft, R.C. 2913.02; three counts of misusing a credit card, R.C. 2913.21; one count of tampering with records, R.C. 2913.42; and one count of possessing criminal tools, R.C. 2923.24. Their separate appeals were consolidated for hearing and disposition. We find no error in their convictions, so we affirm the judgments.
The evidence adduced at trial was that Chu, Fung and co-defendant Yuriko Kawaguchi resided in or near San Francisco, California in May 1998. Chu and Fung offered to pay Kawaguchi $1,000 if she would help them carry out their plan. Kawaguchi, who was experiencing financial difficulties, agreed to do so. Chu and Fung arranged for a fake California driver's license to be created for Kawaguchi under the name of "Chi Tam." On instructions from Chu and Fung, Kawaguchi purchased three airline tickets to Cleveland, Ohio with a credit card and the newly-made fake driver's license under the name of "Chi Tam." Kawaguchi's ticket was reserved under the name of "Chi Tam." Chu's ticket was reserved under the name of "Ricky Tang." Fung's ticket was reserved under his given name, reportedly because he lost his false ID the day before.
They arrived in Cleveland early on May 26, 1998. Fung rented a van, using his given name. All three checked into a downtown Cleveland hotel, using the same false credit card Kawaguchi used to buy the airline tickets. Several hours later, Kawaguchi saw the defendants rip pages from a telephone book that contained the locations of various Best Buy and CompUSA stores located in greater Cleveland. They set out that afternoon with Fung driving the rental van and Chu navigating with a city map.
They first went to a Best Buy store located in North Olmsted, Ohio. Chu and Fung entered the store with Kawaguchi to identify the merchandise they wanted her to purchase. Chu and Fung then exited the store to wait in the van while Kawaguchi, using a false credit card supplied to her by the defendants, purchased a computer and printer for $3,295.24. The merchandise was then loaded into the van, although the defendants were angry that Kawaguchi accepted the store's service agreement because the store opened the sealed computer box.
That same afternoon, they went to CompUSA, also in North Olmsted; Best Buy, in Brooklyn, Ohio; and CompUSA, in Beachwood, Ohio. Kawaguchi alone entered these stores and purchased the same merchandise the defendants told her to buy at the first store, which merchandise was then loaded into the defendants' waiting van. When the credit card Kawaguchi used at the first store did not work for a subsequent purchase, she used a different false credit card supplied to her by the defendants. The defendants then cut up any credit cards that did not work. Kawaguchi's purchases were valued at over $13,000. They then ate at a restaurant and charged the $43.00 bill to one of the false credit cards.
After dinner, they proceeded to the Best Buy in Mayfield Heights, Ohio. At this store, however, the false credit card presented by Kawaguchi did not work. When the sales clerk telephoned the credit card company to complete the order, she was instructed by the credit card company to detain the individual while the credit card company contacted the local police. At the same time, Kawaguchi received a call from the defendants on her cellular telephone inquiring about the delay. Kawaguchi was unable to speak over her cellular phone but signaled to the defendants that there was a problem. Visibly agitated over the delay, Kawaguchi left the store without the credit card or fake California driver's license. Just as Mayfield Heights patrol cars arrived, store personal observed her entering a van parked in a remote area of the parking lot.
Mayfield Heights officer Steven Brown testified that he received a radio dispatch for him to report to the Best Buy store on a complaint that an individual was attempting to use a counterfeit credit card. Upon entering the store parking lot, Officer Brown observed an Asian female walking quickly to enter the passenger side of a van parked in a remote area of the parking lot. Officer Brown and the driver of the van, later identified as defendant Chu, looked at each other and Chu appeared startled. A second radio dispatch described the suspect as being an Asian female in her twenties with shoulder-length brown hair. Officer Brown radioed that he had just observed an individual matching the suspect's description and saw the van exit the parking lot. Officer Brown followed the van and signaled it to stop by activating the patrol car's overhead lights.
After the stop, Officer Brown approached the driver's side of the van and explained that there had been a report that a counterfeit credit card had been presented at the Best Buy store. Kawaguchi, seated in the front passenger seat, handed Officer Brown her true California driver's license and admitted that she was in the Best Buy store but only to use the restroom, not to purchase merchandise. When asked why the store might have had a problem with her credit card, Kawaguchi said one of her credit cards had been stolen previously. Recognizing the inconsistency between Kawaguchi's statements, Officer Brown asked the occupants of the van to follow him back to the store to clear up the matter.
The suspects returned to the Best Buy parking lot in their van. Officer Brown met the Best Buy store manager, who showed him the false credit card and fake California ID the suspect had presented earlier. The photograph on the suspect's fake ID appeared to match Kawaguchi's photograph on her true ID. The store manager positively identified Kawaguchi on scene. As Kawaguchi was placed under arrest, other police officers spoke with Chu and Fung, still occupying the rented van. Those officers observed boxes of computer merchandise in the van similar to that which Kawaguchi attempted to purchase with her false credentials. Chu and Fung were then placed under arrest. A subsequent search of the van produced evidence of credit cards and credit card receipts and maps of Cleveland and other American cities.
Kawaguchi, Chu and Fung each were indicted on twenty-seven counts. When Kawaguchi subsequently agreed to testify against Chu and Fung and entered a guilty plea to one count of forgery, the remaining charges against her were dismissed. During the trial of Chu and Fung, the state nolled four counts charging receipt of stolen property. Chu and Fung were convicted on all twenty-three remaining counts.
The defendants' separate appeals present related arguments, which we will address jointly where appropriate. Both defendants contend that the trial court erred when it denied their motions to continue the trial. Chu's first assignment of error states:
 I. THE COURT ERRED OR ABUSED ANY DISCRETION SHE MAY HAVE HAD WHEN SHE SUMMARILY DENIED, WITHOUT ARTICULATING THE BASIS FOR HER DECISION, THE APPELLANT'S MOTION FOR A CONTINUANCE.
Fung's sixth assignment of error similarly states:
 VI. THE COURT ERRED OR ABUSED ANY DISCRETION IT MAY HAVE HAD WHEN IT SUMMARILY DENIED, WITHOUT ARTICULATING THE BASIS FOR ITS DECISION NOT TO CONTINUE THE TRIAL DATE.
These assignments of error are without merit.
The grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge.State v. Unger (1981), 67 Ohio St.2d 65, syllabus at para. 1. TheUnger court stated:
 In evaluating a motion for a continuance, a court should note, inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.
Unger, 67 Ohio St.2d at 67-68. The trial court's ruling will not be disturbed unless there has been a prejudicial abuse of discretion. See State v. Swanson (1989), 52 Ohio App.3d 78; Statev. Woods (1983), 13 Ohio App.3d 49.
The record before us reflects that both Chu and Fung were indicted on July 9, 1998 and were initially represented by the same attorney. On September 14, 1998, Chu's new counsel entered his appearance. Chu's original counsel requested leave on September 15, 1998 to withdraw from representing Chu, although he continued to represent Fung. On September 22, 1998, Chu's new counsel and Fung's original counsel filed separate motions to continue the trial. Chu's motion requested a continuance of forty-five days. The motions were denied and the case proceeded to trial on September 28, 1998.
Regarding Chu's request for a continuance, we can find no abuse of discretion. Chu did not identify facts demonstrating that his counsel required additional time to prepare for trial, and nothing in the record indicates that Chu's new counsel was inadequately prepared to represent Chu when trial commenced on September 28, 1998. Indeed, Chu's September 15, 1998 motion to suppress indicated that his new counsel had a firm understanding of the circumstances surrounding Chu's arrest. The mere brevity between the date of retention and trial is not sufficient by itself to suggest that counsel was unable to prepare for trial or that a trial continuance was necessary. See, e.g., State v.Reynolds (1998), 80 Ohio St.3d 670 (capital defendant's lead attorney appointed only two weeks prior to trial). Considering also Chu's delay in retaining new counsel and the absence of any showing that Chu was prejudiced by the denial of his requested continuance, we find no error by the court in denying his motion to continue the trial. Chu's first assigned error is therefore overruled.
We likewise find no error by the denial of Fung's motion to continue the trial. Fung did not identify facts demonstrating that his counsel required additional time to prepare for trial, and nothing in the record indicates that Fung's counsel was inadequately prepared to represent Fung when trial commenced on September 28, 1998. Fung makes no showing that he was prejudiced by the denial of his requested continuance, so we again can find no abuse of discretion by the court. Fung's sixth assignment of error is accordingly overruled.
The defendants next contend that the evidence seized should have been suppressed because the police lacked probable cause to arrest the defendants. Chu's second assignment of error states:
 II. THE COURT ERRED WHEN IT DENIED THE APPELLANT'S "MOTION TO SUPPRESS AND FOR THE RETURN OF ILLEGALLY SEIZED EVIDENCE."
Fung raises these related assignments of error:
 I. IF THE TERRY SEARCH WAS PROPER, THEN THE SEARCH OF THE BAN [SIC] AND THE SUBSEQUENT SEARCH OF THE CLOSED BOXES WAS BEYOND THE SCOPE OF THE TERRY SEARCH.
 II. THE SEARCH OF THE DEFENDANT WAS NOT A PROPER TERRY SEARCH BECAUSE THE POLICE OFFICERS DID NOT HAVE SPECIFIC AND ARTICULABLE FATS [SIC] TO WARRANT THE SEARCH.
 III. THE POLICE OFFICERS DID NOT HAVE PROBABLE CAUSE TO ARREST THE DEFENDANT, FUNG; THEREFORE, THE SUBSEQUENT SEARCH BASED ON THE ARREST IS INVALID.
 IV. THE POLICE OFFICERS LACKED PROBABLE CAUSE TO SEARCH THE VAN.
 V. THE DEFENDANT, CHEUK FUNG, HAS STANDING TO OBJECT TO THE SEARCH OF THE VAN.
 VII. THE ENTERING INTO EVIDENCE OF A POLICE RADIO BRADCAST [SIC] BY ITSELF, DOES NOT ESTABLISH THAT THE ACTIONS OF THE POLICE WERE JUSTIFIED TO MAKE A TRAFFIC STOP OF THE DEFENDANTS' VAN.
These contentions are without merit.
A police officer who lacks probable cause but whose observations lead him reasonably to suspect that a motor vehicle occupant has committed, is committing, or is about to commit a crime, may stop the motor vehicle and detain its occupants briefly in order to investigate the circumstances that provoke suspicion. See Berkemer v. McCarty (1984), 468 U.S. 420. See alsoTerry v. Ohio (1968), 392 U.S. 1. "The stop and inquiry must be reasonably related in scope to the justifications for their initiation. Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identify and to try to obtain information confirming or dispelling the officer's suspicions." Berkemer v. McCarty, 468 U.S. at 439
(citation and internal punctuation omitted).
In this case, Officer Brown received information by radio that an Asian female in her early twenties with shoulder-length brown hair had attempted to use a counterfeit credit card at Best Buy. Upon arriving at the Best Buy store, Officer Brown observed an individual who matched the radio description walk quickly from the store to enter the passenger side of a van parked in a remote area of the parking lot. The driver of the van appeared startled when Officer Brown passed. These facts were sufficient to justify Officer Brown's investigatory stop of the van. See State v. Comen
(1990), 50 Ohio St.3d 206 (investigatory stop of reported vehicle 23 minutes after burglary call); State v. Jackson (1996),110 Ohio App.3d 137 (investigatory stop of vehicle in park after reported midnight disturbance); State v. Hakeem (1990), 61 Ohio App.3d 187
(investigatory stop based on radio broadcast that robbery suspect was swearing a red-hooded sweatshirt)
Kawaguchi's inconsistent statements during Officer Brown's brief investigatory detention did not dispel his reasonable suspicions. The defendants then agreed to return to the Best Buy store, at which time Kawaguchi was identified positively as the suspect. Probable cause to make a warrantless arrest exists when the arresting officer has reasonably trustworthy information sufficient to warrant a prudent person in believing that the suspect has committed or was committing an offense. Beck v. Ohio
(1964), 379 U.S. 89; State v. Otte (1996), 74 Ohio St.3d 555, cert. denied, 519 U.S. 836. There is little doubt that the police had probable cause to arrest Kawaguchi.
While detaining the van occupied by defendants Chu and Fung, other officers observed various large boxes of computer merchandise similar to that which Kawaguchi attempted to purchase fraudulently at the Mayfield Heights Best Buy store. These facts, coupled with the circumstances of Kawaguchi's arrest, Chu's startled reaction upon first observing Officer Brown, and the defendants' attempt to leave the scene furnished the police with probable cause particularized to arrest defendants Chu and Fung as aiders and abettors to Kawaguchi's criminal activity. SeeUnited States v. Caicedo (C.A.6 1996), 85 F.3d 1184. See alsoState v. Morris (1988), 48 Ohio App.3d 137.
Under the "automobile exception," the police were authorized to conduct a warrantless search of the van, then or later, if there was probable cause to believe the van contained contraband or other evidence of a crime that was subject to immediate seizure. See Florida v. Meyers (1984), 466 U.S. 380; United States v. Ross
(1982), 456 U.S. 798; Texas v. White (1975), 423 U.S. 67;Chambers v. Maroney (1970), 399 U.S. 42. "An officer has probable cause to search a vehicle if, based on the totality of the circumstances, there was a fair probability that contraband or evidence of a crime would be found in it." State v. Feliciano
(1996). 115 Ohio App.3d 646, 663. Because the facts here suggested that the van was being used at least by Chu and Kawaguchi to transport merchandise purchased fraudulently and that the van contained that merchandise, the police had probable cause to conduct a warrantless search under the "automobile exception." See State v. Mills (1992), 62 Ohio St.3d 357, 367
("Certainly, discovery of a vehicle suspected to have been used recently in a robbery creates an immediate need to act, before the automobile can be removed."). See also State v. Feliciano,supra.[1]
Accordingly, the court did not err in denying Chu's motion to suppress. And while Fung did not move to suppress the evidence seized, we would reach the same conclusion if he had. These assignments of error are therefore overruled.
Both defendants contest the sufficiency of the evidence. Chu's third assigned error states:
 III. THE COURT ERRED AND THE APPELLANT WAS DENIED DUE PROCESS WHEN THE COURT DENIED APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL MADE AT THE END OF THE STATE'S CASE AND RENEWED AT THE CLOSE OF ALL THE EVIDENCE.
Fung's ninth assigned error similarly says:
 IX. THE COURT ERRED AND THE APPELLANT WAS DENIED DUE PROCESS WHEN THE COURT DENIED APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL MADE AT THE END OF THE STATES [SIC] CASE AND RENEWED AT THE CLOSE OF ALL OF THE EVIDENCE.
These assignments of error are without merit.
Pursuant to Crim.R. 29 (A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus. State v.Jenks (1991), 61 Ohio St.3d 259, held:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia
[1979], 443 U.S. 307, followed.)
Jenks, syllabus at para. 2.
Both defendants contest their convictions for engaging in a pattern of corrupt activity in violation of R.C. 2923.32, which, in relevant part, proscribes the following:
 (A) (1) No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity * * *.
R.C. 2923.31 (C) defines "enterprise" to include
 any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. "Enterprise" includes illicit as well as licit enterprises.
R.C. 2923.31 (E) defines "patterns of corrupt activity" to mean
 two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event.
"Corrupt activity" is defined under R.C. 2923.31 (I) (2) (c) to mean "engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in conduct that is in violation of R.C. 2913.02, theft; R.C. 2913.21, misuse of a credit card; R.C. 2913.31, forgery and uttering; and R.C. 2913.42, tampering with records.
Viewing the evidence in the light most favorable to the prosecution, we have no difficulty in concluding that sufficient evidence was presented which, if believed, would convince the average mind of the defendants' guilt beyond a reasonable doubt. That evidence plainly showed that an enterprise existed among Chu, Fung and Kawaguchi and that they engaged in a pattern of corrupt activity. The defendants rely on State v. Thrower (1989),62 Ohio App.3d 359, but nothing in that case detracts from the sufficiency of the evidence presented in the instant case. The defendants' convictions were supported by sufficient evidence, so we overrule these assignments of error.
The defendants next assert that they were convicted of an uncharged crime. Chu's fourth assigned error asserts:
 IV. THE COURT ERRED AND DUE PROCESS WAS DENIED WHEN THE APPELLANT WAS CONVICTED AND SENTENCED FOR A CRIME NOT CHARGED IN THE INDICTMENT.
Fung's tenth assigned error similarly contends:
 X. THE TRIAL COURT ERRED AND THE APPELLANT'S DUE PROCESS WAS VILATED [SIC] WHEN THE APPELLANT WAS CONVICTED AND SENTENCED FOR A CRIME NOT CHARGED IN THE INDICTMENT.
These assigned errors are without merit.
The defendants assert that while they were charged with engaging in a pattern of corrupt activity in violation of R.C.2923.32, the court instructed on an uncharged "conspiracy" offense. But that is not what this record reflects.
The defendants were not charged with the separate distinct offense of conspiracy to engage in a pattern of corrupt activity under R.C. 2923.01. The court did not instruct on that separate distinct offense, and the defendants were not convicted of that offense. The record instead shows that the defendants were charged with the specific offense of engaging in a pattern of corrupt activity under R.C. 2923.32. The court additionally instructed on complicity, R.C. 2923.03. Instructing on complicity does not constitute an uncharged offense.
Ohio law establishes that a defendant may be charged in an indictment as a principal offender and the defendant is thereby on notice that he may be convicted as either the principal offender or as an aider and abettor. See R.C. 2923.03 (F). See also State v. Trumbleson (1995), 105 Ohio App.3d 693; State v.Ensman (1991), 77 Ohio App.3d 701. Because these defendants were charged as principals, they likewise could be convicted either as principals or as aiders and abettors in complicity with another. We accordingly overrule these assignments of error.
Fung's eighth assigned error states:
 VIII. THE COURT, PROSECUTOR AND POLICE SHOWED FAVORITISM TOWARDS THE DEFENDANT KAWAGUCHI AND A BIAS AGAINST THE DEFENDANT CHEUK FUNG.
This assignment of error is without merit.
Fung does not identify any bias by the trial court against the defendants. Kawaguchi's admission at trial that she secreted a small amount of marijuana in her deodorant container that the police did not even discover hardly shows an unfair bias against Fung. Fung does not identify any exculpatory evidence that the prosecutor did not disclose. And the fact that Kawaguchi reached a plea bargain that the defendants explored fully-at trial shows no improper bias prejudicial to Fung. Accordingly, we overrule Fung's eighth assignment of error.
In sum, we find each of the defendants' assignments of error are without merit. Accordingly, we affirm defendant Chu's conviction in Case No. 75583 and we affirm defendant Fung's conviction in Case No. 75689.
It is ordered that appellee recover of appellants its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendants' convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TERRENCE O'DONNELL, P.J., and MICHAEL J. CORRIGAN, J., CONCUR.
 _________________________ DIANE KARPINSKI JUDGE
[1] Chu cites State v. Mesa (1999), 87 Ohio St.3d 105, to challenge whether a proper inventory search occurred here. But because probable cause justified the search under the "automobile exception," it is immaterial whether evidence would have been discovered inevitably pursuant to a routine inventory search of the impounded vehicle. Consequently, Mesa provides no relief.