**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0731n.06
Filed: November 26, 2008

**No. 07-5634**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| MICHAEL L. WILLIAMS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: CLAY and GRIFFIN, Circuit Judges; and STAFFORD, District Judge.[*]

GRIFFIN, Circuit Judge.

Defendant Michael L. Williams appeals the district court's order denying his motion to suppress evidence seized from his person and vehicle following his arrest. Defendant also appeals his sentence as unreasonable. Because we conclude that the investigating officer had probable cause to order defendant's warrantless arrest, the search incident to his arrest was lawful, and we therefore affirm. We also affirm defendant's sentence as procedurally and substantively reasonable.

I.

---

[*]The Honorable William H. Stafford, Jr., Senior United States District Judge for the Northern District of Florida, sitting by designation.

On June 2, 2006, Sergeant Ken Holstein received a phone call from a confidential informant that he knew to be "very, very reliable."[1] The caller informed Holstein that he had observed what he believed was prostitution-related activity near 15th Street and Madison Avenue, in Covington, Kentucky.[2] According to Sergeant Holstein's testimony, this area is known for drug trafficking and prostitution-related activity. The informant reported that he had observed a black male, later identified as defendant, giving money to a white female. The caller provided Sergeant Holstein with a description of both suspects and reported that the male was driving a "white Dodge Dynasty."

While still speaking with the informant on his cell phone, Sergeant Holstein drove to the intersection of 15th Street and Madison Avenue in an unmarked police car. Upon arrival, Holstein observed two people who matched the informant's description, a white woman that he recognized as Katie Jo Hensley, a known prostitute and crack user, and a black male, who was walking away from Hensley. Sergeant Holstein did not know the male's name, but he fit the description provided by the informant, and Holstein recognized him as someone he had seen before with an individual named Artemis Jackson.

Holstein watched the man walk behind a nearby building and, a short time later, return and embrace Hensley. Although Sergeant Holstein did not directly observe a hand-to-hand drug

---

[1] Sergeant Holstein began his career as a police officer in 1988 with the City of Covington Police Department. In June 2006, he was the supervisor of the crime suppression unit, a post he had occupied since his promotion in 2002. The crime suppression unit "mainly deals with drugs and vice-type crimes." He was also a member of the FBI Safe Streets task force at the time of defendant's arrest.

[2] The facts contained herein are drawn from the district court's November 20, 2006, evidentiary hearing and the district court's November 22, 2006, memorandum opinion and order denying defendant's motion to suppress.

transaction, he suspected that one had occurred. After their embrace, the man walked toward a white Dodge Dynasty, and Hensley walked in the opposite direction, toward Sergeant Holstein's vehicle.

As Hensley passed Sergeant Holstein's vehicle, he saw her place something inside her mouth. Based on his experience as a narcotics officer, Holstein testified that addicts often employed this method to hide illegal contraband. Sergeant Holstein exited his vehicle and confronted Hensley, instructing her to empty her mouth. Hensley complied, and expelled a small bag containing crack cocaine. Sergeant Holstein asked Hensley who sold her the crack, but Hensley remained silent.

Holstein arrested Hensley and charged her with possession of crack cocaine and drug paraphernalia, and Officer Cory Warner transported her to the Kenton County Detention Center (KCDC). Because Officer Warner had prior dealings with Hensley and had developed a rapport with her, Sergeant Holstein asked Officer Warner to elicit from Hensley the identity of the individual who sold her the crack cocaine. Officer Warner spoke with Hensley about the source of the cocaine when they arrived at the KCDC. According to Officer Warner, Hensley stated that she had purchased the crack cocaine from someone she knew only as "Shorty."

Later that evening, Sergeant Holstein attempted to identify the individual known to Hensley as "Shorty." He tried to trace the white Dodge Dynasty, but discovered that it was improperly registered. In addition, Sergeant Holstein contacted the informant and requested that he notify him if the white Dodge Dynasty returned to the 15th and Madison Avenue location. During that call, the informant mentioned that he had observed Artemis Jackson and a black male with the last name of Williams fleeing an arrest in that area in May 2006.

Based on this information, Sergeant Holstein searched police records for prior incidents in the 15th and Madison Avenue area involving Artemis Jackson and a black male with the last name of Williams. Sergeant Holstein discovered that Artemis Jackson and a black male named Michael L. Williams were arrested in May 2006 and charged with fleeing and evading arrest. Holstein then retrieved Michael L. Williams's booking photograph from the May 2006 incident. According to Sergeant Holstein's testimony, Williams's booking photograph pictured the same individual he had observed earlier that day embracing Hensley, and whom Hensley had identified as Shorty, the man who sold her the crack cocaine on June 2, 2006.

The following morning, Sergeant Holstein called the state prosecutor and inquired about procuring an arrest warrant for Williams. The prosecutor advised Holstein that if he located Williams on June 3, 2006, he should make a "probable cause arrest for trafficking."

Later that day, Sergeant Holstein received a second phone call from his confidential informant reporting that the same male he had observed on June 2, 2006, had returned to the 15th and Madison Avenue area in his white Dodge Dynasty. The informant also gave Sergeant Holstein a "very good description" of the man's clothing, which he described as "a striped polo shirt, jeans, [and] sunglasses."

Sergeant Holstein requested additional units to the scene because of Williams's history of fleeing arrest. He then drove to the 15th and Madison Avenue location and observed the same man he had watched the day before. The man was wearing clothing that matched the informant's description. Holstein watched the man walk to and from a white Dodge Dynasty and a nearby building.

In an effort to avoid a foot chase, Sergeant Holstein waited until the man got into his Dodge before ordering the marked units to conduct a felony traffic stop. The man was arrested and identified as Michael L. Williams. A search of defendant and his vehicle incident to his arrest revealed several items of contraband, including crack cocaine, scales, a cell phone, money, powder cocaine, and marijuana.

On July 12, 2006, defendant was charged in a two-count felony indictment alleging: (1) distribut[ion] of crack cocaine, in violation of 21 U.S.C. § 841(a)(1); and (2) possess[ion] with the intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1).

Shortly thereafter, defendant moved to suppress the contraband seized during the search of his person and vehicle. Defendant argued that the search incident to his arrest was unlawful because Sergeant Holstein lacked probable cause to arrest him, and thus any seized evidence should be excluded as fruit of the poisonous tree.

On November 20, 2006, the district court conducted an evidentiary hearing and received testimony from two witnesses, Sergeant Holstein and Officer Warner. At the conclusion of the hearing, the court found "each witness [] highly credible." On November 22, 2006, the district court entered an order denying defendant's motion to suppress, finding that:

> at the moment of Defendant's arrest on June 3, 2006, Sergeant Holstein possessed reasonably trustworthy information that Defendant had sold drugs to Ms. Hensley the previous day. As a result, the arrest was lawful and did not violate the Defendant's Fourth Amendment rights. Accordingly, the search incident to that lawful arrest was valid and the evidence seized during that lawful search is not subject to suppression.

In its order, the district court made the following findings of fact:

1. A very reliable confidential source (someone other than Hensley) had advised Holstein that he/she had observed a known prostitute give money to a black male in an area known for prostitution and drug activity. That same source provides Holstein with a description of both individuals;

2. Upon responding to the area, Holstein observes both individuals, who meet the description provided by the reliable source, in close proximity to each other;

3. Holstein recognizes the female as a known prostitute, Katie Jo Hensley, and the black male as an associate of someone named Artemis Jackson. Although Holstein cannot put a name to the face of the black male, he does recognize him as someone he has seen in that area before;

4. Holstein observes the black male walk away to an area behind an adjacent building and return, only to embrace Ms. Hensley;

5. After embracing Ms. Hensley, the black male departs in a white Dodge Dynasty vehicle. Ms. Hensley walks toward Holstein who observes her place something in her mouth;

6. Holstein orders Hensley to spit out the contents of her mouth and a baggie of crack cocaine, estimated by Holstein as a $30-$40 rock, is expelled;

7. After Ms. Hensley is arrested and provided with her Miranda rights, she is transported to the Kenton County Detention Center. During a discussion with the transporting officer, Cory Warner, Hensley told Warner that the person who sold her the drugs was someone known to her as "Shorty." Warner forwards that information to Holstein;

8. Holstein thereafter searches the Covington Police Department arrest records and obtains a booking photograph of Michael Lamar Williams from May, 2006. According to Holstein, Williams and Artemis Jackson had been arrested in that same general area [in] May, 2006 and charged with fleeing and evading. Holstein recognizes the booking photograph of Williams as the same person he had observed earlier that day embracing Ms. Hensley;

9. On June 3, 2006, the same reliable confidential source contacts Holstein and advises him that the same white Dodge Dynasty is in the same general area.

On December 8, 2006, defendant entered into a conditional guilty plea that allowed him to appeal the district court's order denying his motion to suppress. On May 16, 2007, defendant appeared for sentencing. The district court adopted the presentence investigation report that designated defendant as a career offender under U.S.S.G. § 4B1.1. No party objected to the presentence report. After a lengthy hearing, the court sentenced defendant to a term of 327 months imprisonment on each count, to be served concurrently, followed by eight years of supervised release. This appeal followed.

## II.

Defendant contends that the district court erred when it denied his motion to suppress because Sergeant Holstein lacked probable cause when he ordered his warrantless arrest. Specifically, defendant asserts that Sergeant Holstein never saw him commit a drug trafficking offense; that Holstein made insufficient efforts to corroborate the information he received from Hensley and his confidential informant; and that the district court erred in considering defendant's May 2006 arrest when evaluating Holstein's probable cause because such information was "stale."

"When reviewing a district court's ruling on a motion to suppress, we will reverse findings of fact only if they are clearly erroneous." *United States v. Coffee,* 434 F.3d 887, 892 (6th Cir. 2006) (citing *United States v. Galloway*, 316 F.3d 624, 628 (6th Cir. 2003)). "Legal conclusions as to the existence of probable cause are reviewed de novo." *Id.* (internal citation omitted). "When the district court has denied the motion to suppress, we review all evidence in a light most favorable to the Government." *Id.* (internal citation omitted).

"Police may arrest a person without a warrant if they have probable cause at the time of the arrest to believe that the person has committed or is committing a crime." *United States v. Caicedo*, 85 F.3d 1184, 1192 (6th Cir. 1996). "Probable cause . . . does not require any showing that the officer's suspicions prove to be correct or that they are more likely true than false." *Id.* A lawful warrantless arrest is based on the totality of the circumstances, and "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 245 n.13 (1983).

When analyzing whether a warrantless arrest is supported by probable cause, we ask "whether, at the time of the arrest, the facts and circumstances within the arresting officer's knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent person to conclude that an individual either had committed or was committing an offense." *United States v. Torres-Ramos*, 536 F.3d 542, 555 (6th Cir. 2008) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

A.

Defendant first asserts that Sergeant Holstein lacked probable cause to order his warrantless arrest because he relied on information provided by Hensley, a known crack addict and prostitute. Thus, defendant posits, under *Alabama v. White*, 496 U.S. 325, 332 (1990), Hensley's information was neither reliable nor trustworthy, which calls into question the prudence of Sergeant Holstein's conclusion that Williams committed a drug trafficking offense on June 2, 2006. *See Beck*, 379 U.S. at 91.

We have identified three categories of informants: (1) named informants; (2) confidential informants (who are known to the police but not to others); and (3) anonymous informants (who are unknown to everyone). *See United States v. Ferguson*, 252 F. App'x 714, 720-21 (6th Cir. 2007) (unpublished). While an informant's "veracity, reliability and basis of knowledge are all highly relevant in determining the value of his report, these elements [are] not [] understood as entirely separate and independent requirements" that we must systematically apply to every case. *United States v. Hooper*, 58 F. App'x 619, 625 (6th Cir. 2003) (unpublished) (quoting *Gates*, 462 U.S. at 230). Rather, "they should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question [of] whether there is probable cause" to believe that a person has committed a crime. *Id.*

In *United States v. Couch*, 367 F.3d 557 (6th Cir. 2004), we held that a known informant is inherently more credible because law enforcement can potentially hold that informant accountable for providing false information. *Id.* at 560-61. Although Sergeant Holstein did not personally know Hensley, Officer Warner did know her, and Hensley was speaking directly to Warner when she named "Shorty" as the person who sold her the crack cocaine. In addition, both Holstein and Warner could hold Hensley accountable if her information turned out to be false.

The district court also afforded substantial weight to the confidential informant's report, who had "advised Holstein that he/she had observed a known prostitute give money to a black male in an area known for prostitution and drug activity. That same source provided Holstein with a

description of both individuals."[3]  Sergeant Holstein also characterized the informant as "[v]ery, very, reliable," testimony which the district court found highly credible.  While still speaking with the informant, Holstein arrived at the scene and contemporaneously confirmed details that matched the informant's report.  The informant also provided a specific description of defendant the following day, and offered reliable information about defendant's whereabouts on June 2 and June 3, 2006.

Under the totality of the circumstances, we hold that both Hensley and the confidential informant provided Holstein with reasonably trustworthy information.  *See Torres-Ramos*, 536 F.3d at 555.

Defendant next contends that Sergeant Holstein made insufficient efforts to corroborate the information he received from Hensley and the informant.  The record, however, is replete with examples of Holstein's corroboration.  Specifically, he corroborated almost every detail of the informant's report, including the location of the alleged sale, the specific descriptions of the male and female involved in the suspected transaction, and the make and model of defendant's vehicle.  He also independently observed what he believed was a drug transaction, testimony the district court found highly credible.

In *United States v. Draper*, 358 U.S. 307 (1959), the Supreme Court found probable cause where an informant told a federal narcotics officer that a man would arrive on a Denver train from Chicago in the next few days and that he would be carrying heroin.  *Id.* at 309.  The Court noted that by the time the officer observed the suspect, he matched the race, physique, clothing, baggage, and

---

[3]Although defendant refers to Holstein's informant as "anonymous" throughout his brief, the record supports the government's assertion that Holstein possessed the informant's phone number, which negates defendant's attempt to characterize Holstein's informant as anonymous.

gait of the man described by the informant, and found that the officer had "personally verified every facet of the information given him by [the informant] except whether [the man] had accomplished his mission, and whether he had . . . heroin on his person or in his bag." *Id.* at 313. The Court concluded that the officer had probable cause to believe that the man he observed was committing a crime because "every [] bit of [] information" provided by the informant was "personally verified." *Id.*

In *United States v. Pasquarille*, 20 F.3d 682 (6th Cir. 1994), we found probable cause to suspect that a man's vehicle contained cocaine where an officer was given a detailed account by another police officer that, according to an eyewitness informant, an individual was attempting to sell drugs at a nearby truck stop. *Id.* at 686. The eyewitness reported that the vehicle involved in the attempted sale was a light-colored van with a step top, and the vehicle bore a Florida license plate ending with the characters "91E." *Id.* at 687. At the time the arresting officer approached the attending officer who had stopped the van, the arresting officer had personally verified every facet of the information provided by the informant, except whether the defendant was actually involved in the sale of narcotics. *Id.* We held that the informant's ability to describe in detail the type of vehicle, the state from which the license plate was issued, and several characters displayed on the van's license plate provided a sufficient basis for the officer's probable cause. *Id.*

We hold that probable cause existed here as well. At the time of the incident, Sergeant Holstein possessed seventeen years of law enforcement experience, all of which were spent in a department specializing in narcotics interdiction. When Sergeant Holstein began his investigation of the black male Hensley had identified as Shorty, he possessed personal knowledge of the

defendant's appearance and had witnessed what he suspected was a drug transaction between defendant and Hensley. After speaking with his "very [] reliable" informant for the second time, Holstein was able to locate an arrest record for a Michael L. Williams and Artemis Jackson, confirming his original suspicion that the man he observed on June 2, 2006, was an acquaintance of Artemis Jackson. When Sergeant Holstein obtained defendant's May 2006 booking photograph, he recognized defendant as the same person he had observed earlier that day embracing Hensley, and whom Hensley had identified as Shorty, the man she said sold her the crack cocaine. Thus, contrary to defendant's position, Sergeant Holstein discovered defendant's identity while conducting an independent investigation driven by his efforts to corroborate his informants' information.

Most important, Holstein witnessed part of the suspected drug transaction. He testified that he arrived at the 15th Street and Madison Avenue location shortly after the informant reported that he saw two people (matching defendant and Hensley's description) exchanging money. Upon his arrival, he saw defendant walk away from Hensley, disappear behind a building, return, and embrace Hensley. Immediately following their embrace, he saw Hensley place an object in her mouth, which he testified was a common method employed by addicts to conceal illegal contraband. When Holstein stopped Hensley directly following her embrace with defendant, she expelled a bag of crack cocaine hidden in her mouth.

We hold that under the totality of the circumstances, Sergeant Holstein had probable cause to order defendant's warrantless arrest based on his conclusion that defendant had engaged in a drug trafficking crime on June 2, 2006. Because defendant's arrest was lawful, the search incident to his arrest was lawful. *Chimel v. California*, 395 U.S. 752, 754 (1969).

B.

Defendant also asserts that information relating to his May 2006 arrest was stale, and therefore the district court erred in considering that fact when evaluating Holstein's probable cause. Generally, we consider the following four factors in determining whether an officer's information is stale: "the defendant's course of conduct; the nature and duration of the crime; the nature of the relevant evidence; and any corroboration of the older and more recent information." *United States v. Czuprynski*, 46 F.3d 560, 567 (6th Cir. 1995) (en banc).

Defendant's reliance on this argument is misplaced. A staleness argument attacks the length of time between when an officer receives information that supports probable cause, and when it is actually employed to support probable cause, typically in a warrant situation. *United States v. Harvey*, No. 05-6163, 2007 WL 1339837, at *3 (6th Cir. 2007) (unpublished). Sergeant Holstein did not rely on defendant's May 2006 arrest to determine whether defendant had committed a drug trafficking offense on June 2, 2006. Rather, Sergeant Holstein used the May 2006 arrest information to obtain a booking photograph of defendant so that he could compare the photo with the individual he observed with Hensley earlier that day. Defendant's staleness argument lacks merit.

C.

Finally, defendant asserts that the district court failed to properly address the mitigating factors raised by his attorney during his sentencing hearing under 18 U.S.C. § 3553. He also claims that the district court erroneously concluded that it was required to sentence defendant near the statutory maximum because he was designated as a career offender in his presentence report.

We review the district court's sentence and exercise of discretion for "reasonableness." *United States v. Keller,* 498 F.3d 316, 322 (6th Cir. 2007); *see also United States v. Webb,* 403 F.3d 373, 383 (6th Cir. 2005). In determining reasonableness, we review "the factors evaluated and the procedures employed by the district court in reaching its sentencing determination." *Webb,* 403 F.3d at 383. "Section 3553(a) instructs district courts to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in that section." *United States v. Foreman*, 436 F.3d 638, 643 (6th Cir. 2006). Although, undoubtedly, the review of specific § 3553(a) factors facilitates appellate review, "this court has never required 'the ritual incantation' of the factors to affirm a sentence." *United States v. Williams*, 436 F.3d 706, 709 (6th Cir. 2006).

Defendant's assertion that the district court failed to properly consider the mitigating factors raised by his attorney during sentencing is refuted by the record. The transcript reveals that the court noted defendant's "history of drug abuse," his failure to graduate high school, "his difficult upbringing," and that the court understood that "his [criminal] history and characteristics were a product of his environment."

There is also no evidence that the district court felt bound to sentence defendant near the statutory maximum because he was a career offender. Although the district court stated that "the Sixth Circuit has said that when someone is a career offender, the court should impose a sentence near the statutory maximum," the record reveals that the district court did not feel bound by that proposition. The district judge noted that in the present case, the statutory maximum was "[l]ife imprisonment," but stated, "I'm not going to impose that sentence."

We conclude that the district court's decision to impose a sentence of 327 months was reasonable, based on a proper assessment of defendant's criminal history and mitigating factors, and not the result of an erroneous interpretation of the law.

III.

For these reasons, we affirm.