[Cite as *State v. Phillips*, 2016-Ohio-5944.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 15AP-1038 |
| v. | : | (C.P.C. No. 14CR-4335) |
| Angelo P. Phillips, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

## D E C I S I O N

### Rendered on September 22, 2016

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Steven L. Taylor*, for appellee. **Argued:** *Steven L. Taylor.*

**On brief:** *Kura, Wilford & Schregardus Co., L.P.A.,* and *Sarah M. Schregardus*, for appellant. **Argued:** *Sarah M. Schregardus.*

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, P.J.

{¶ 1} Defendant-appellant, Angelo P. Phillips, appeals the October 15, 2015 judgment of the Franklin County Court of Common Pleas convicting him, pursuant to a plea of no contest, and imposing sentence. For the following reasons, we affirm the judgment of the trial court.

## I. Facts and Procedural History

{¶ 2} On April 30, 2014, Detective Guy Grinstead of the Whitehall Division of Police applied for a warrant to search a residence on Flowering Cherry Court in Blacklick, Ohio ("the residence"). In an attachment to his affidavit, Detective Grinstead provided the following factual statement in support of the issuance of the search warrant:

Detectives Earl and Grinstead were contacted by informant #ND-132-05. This informant has provided information in the past leading to arrests and a search warrant resulting in the recovery of illegal narcotics and cash. This informant is considered reliable. The informant stated that he/she knew a drug dealer by the name of AJ who sells heroin and crack cocaine in and around the Whitehall area. The informant described AJ as a black male in his mid-twenties with short hair. The informant stated that AJ was approximately 6ft tall and weighed around 180 pounds. The informant stated that AJ usually drives a black Dodge Charger but sometimes will show up in different rental cars to deliver the drugs. The informant stated that he/she has purchased both crack cocaine and heroin from AJ on numerous occasions in the past month. The informant provided a telephone number for AJ * * *. The informant stated that he/she could call AJ and have him deliver drugs.

Within the last 7 days Detectives Grinstead and Earl met with the informant. The informant and the informant's vehicle were searched and there was no contraband located. The informant was provided with city funds and was directed to place a call to AJ. The phone call was monitored by Detective Grinstead. * * * The informant ordered up a predetermined amount of crack cocaine and heroin from a male that he/she identified as AJ. The male identified as AJ directed the informant to a meeting location near Noe-Bixby Rd. and E. Main St. The informant was followed to the location under constant surveillance by Detective Grinstead. Detective Earl, Officer Mckittrick, and Officer Fullerton set up surveillance on the location in unmarked vehicles waiting for the arraigned drug deal to occur. Approximately 15 minutes later a male matching the description of AJ pulled into the arraigned location in a silver 2014 Dodge Charger. The vehicle's license plate * * * out of Michigan is registered as a rental vehicle. The vehicle pulled up next to the informant vehicle and parked. The informant got out of his/her vehicle and got into the passenger seat of the rental car. The informant was inside the car for approximately 1 minute and then returned to his/her vehicle and left the lot. The informant then drove to a predetermined location under constant surveillance by Detective Earl. The informant handed Earl the purchased heroin and crack cocaine and stated that he/she purchased the drugs from AJ.

The informant and the informant's vehicle were again searched and there was no contraband located. The recovered

heroin and crack cocaine were both field tested with positive results. The drugs were placed into police property as evidence.

Surveillance was still being conducted on this above vehicle and occupant identified as AJ. The vehicle was followed of the lot by unmarked police vehicle directly to a house located in Blacklick. The subject pulled into a driveway located at [the residence] and parking. The subject was observed walking into the house. Also located in the driveway was a black Dodge Charger as described by the informant and a maroon colored Honda SUV. The black Dodge Charger and the Maroon Honda SUV are registered to a 41 year old female black by the name of Michelle Phillips. After checking police records through OHLEG it was determined that Michelle is the likely mother of Angelo Phillips a 24 year old male black. A BMV photo of Angelo Phillips was shown to the informant and the informant identified the subject in the photo with 100% certainty as the person he/she knew as AJ and the same person that had just sold him/her the recovered drugs.

Within the last 72 [hours] Detectives met with the same informant. The informant and the informant's vehicle were again searched and no contraband was located. The informant was provided with city funds and was directed to place a call to the person identified as Angelo Phillips. The phone call was monitored by Detective Grinstead and Detective Earl was on surveillance at [the residence]. The phone number as used above was dialed * * * and a male identified as AJ, Angelo Phillips answered. The informant ordered a predetermined amount of crack cocaine. Phillips directed the informant to a location on Bairsford Ave in Columbus. The informant was then followed under constant surveillance to the directed location on Bairsford Ave. Detective Earl then observed a male matching the description of Angelo Phillips exit [the residence] and get into the 2014 silver Dodge Charger. Earl then followed the Charger to Bairsford Drive. The vehicle went to a location believed to be * * * Bairsford Ave. A[n] unknown black male then exited the apartment and met Angelo at his car. Angelo met with the male for a brief moment at the vehicle. The unknown male then walked away and met with the informant around the corner. The unknown male left the window of the informant and walked back to Angelo who appeared to be waiting on the unknown male.

The informant then drove to the predetermined meeting location under constant surveillance by Detective Grinstead.

The informant handed Grinstead the purchased crack cocaine. The informant stated that an unknown male black believed to be a "runner" for AJ delivered the crack cocaine to him/her. The informant and the informant's vehicle were searched and no contraband was located. The crack cocaine was field tested with a positive result and was placed into property as evidence.

It is believed that drug proceeds and narcotics are being stored at [the residence]. It is also believed that Angelo Phillips is currently living at [the residence]. Since the first controlled narcotics buy surveillance has been conducted at this location and the above vehicle used during both drug deals has been at this location on four separate days and has been seen at the location as early as 7:00am in the morning. The current owner listed for the house comes back to a business believed to be associated with his mother Michelle Phillips. Angelo Phillips arrest history includes a felonious assault in 2010, a felony possession of drugs in 2013, and a tampering with evidence in 2013.

Under these above circumstances it would be common to serve a search warrant and recover drugs and drug related evidence. This would be routine, common practice.[1] Based on the information regarding the above subjects arrest history and based on Detective Grinstead's past experience it is believed to be likely the suspect(s) would be armed as is common with narcotics traffickers and the ability for the suspect(s) to obtain a weapon or destroy evidence is likely if entry is delayed. This search warrant is requested based on the above facts and based on Detective Grinstead's 13 years of law enforcement experience that includes involvement in several hundred drug related arrests and investigations.

Under these above circumstances it would be common to serve a search warrant and recover drugs and drug related evidence. This would be routine, common practice. Based on

[1] We note that the affidavit states that "[u]nder these above circumstances it would be common to serve a search warrant and recover drugs and drug related evidence." (State's Ex. A at 6.) However, this statement suggests that the affiant confuses the roles of the affiant and the magistrate in the search warrant process. As we note in this decision, it is the responsibility of the magistrate, not the affiant, to " 'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *State v. George,* 45 Ohio St.3d 325 (1989), paragraph one of the syllabus, quoting *Illinois v. Gates,* 462 U.S. 213, 238-39 (1983). *See also State v. Castagnola,* 145 Ohio St.3d 1, 2015-Ohio-1565, ¶ 49 (stating that "under Fourth Amendment analysis, there is a line between permissible police interpretation and usurpation of the magistrate's function"). (Internal quotations and citations omitted.)

the information regarding the above subjects being seen with and known to carry firearms and based on Detective Grinstead's past experience it is believed to be likely the suspect(s) would be armed as is common with narcotics traffickers and the ability for the suspect(s) to obtain a weapon or destroy evidence is likely if entry is delayed. This search warrant is requested based on the above facts and based on Detective Grinstead's 13 years of law enforcement experience that includes involvement in several hundred drug related arrests and investigations.

(Sic passim.) (State's Ex. A at 4-7.)   Based solely on the information in the affidavit, a judge issued a search warrant for the residence.   The scope of the search was limited to the following:

CONTROLLED SUBSTANCES INCLUDED IN SCHEDULE I THROUGH V, AS DESCRIBED IN THE OHIO REVISED CODE, PAPERS INDICATING OCCUPANCY AND/OR OWNERSHIP, DRUG PARAPHERNALIA, DRUG RECORDS, DRUG MONIES AND/OR PROCEEDS, WEAPONS, OTHER EVIDENCE OF ILLICIT DRUG TRAFFICKING UNKNOWN AT THIS TIME, FRUITS AND/OR INSTRUMENTALITIES OF DRUG TRAFFICKING, ELECTRONIC RECORDING AND/OR RECORD KEEPING DEVICES AND AUTHORITY TO SEARCH ANY PERSON OR PERSONS AT SUCH LOCATION, IDENTITIES KNOWN OR OTHERWISE.

(State's Ex. A at 1.)

{¶ 3}   At the suppression hearing, Detective Grinstead testified regarding his investigation.  On April 30, 2014, following the issuance of the search warrant, detectives located appellant's vehicle near where the second drug transaction occurred on Bairsford Avenue.  Detective John Earl, along with three other officers, stopped appellant in his vehicle after he left the Bairsford Avenue location.  At the time appellant was stopped, Detective Grinstead testified that he still had probable cause to believe appellant had committed a drug-trafficking offense.

{¶ 4}   At some point after officers stopped appellant, they arrested him and seized keys from him, one of which was used by officers to open the door of the residence.  Police then executed the search warrant on the residence, seizing heroin, cocaine, and money found inside.

{¶ 5}   On August 15, 2014, a Franklin County Grand Jury filed an indictment, charging appellant with two criminal counts: possession of heroin, in violation of R.C. 2925.11, a felony of the second degree; and possession of cocaine, in violation of R.C. 2925.11, a felony of the third degree.  On November 10, 2014, appellant filed a motion to suppress, asserting constitutional violations arising from the search of the residence and his seizure.  On March 24, 2015, plaintiff-appellee, State of Ohio, filed a memorandum contra appellant's motion to suppress.  On June 5, 2015, the trial court held a hearing on the motion to suppress.  On August 4, 2015, the trial court filed an entry denying appellant's motion to suppress.

{¶ 6}   On August 13, 2015, appellant entered a plea of no contest to the charges as indicted.  On September 25, 2015, the trial court held a sentencing hearing, imposing a sentence of incarceration for a period of five years for the conviction of possession of heroin, and a period of two years for the conviction of possession of cocaine, to be served concurrently.  Additionally, the trial court imposed a mandatory period of postrelease control for a period of three years.  On October 15, 2015, the trial court filed a judgment entry reflecting appellant's conviction and sentence.

## II.  Assignment of Error

{¶ 7}   Appellant appeals and assigns the following single assignment of error for our review:

> The trial court erred when it denied Angelo Phillips' Motion to Suppress in violation of the Fourth Amendment to the U.S. Constitution, and Article I, Sec. 14 of the Ohio Constitution.

## III.  Discussion

{¶ 8}   In his sole assignment of error, appellant asserts the trial court erred by denying his motion to suppress.  Appellant contends that both the search of the residence and his seizure violated his constitutional rights.

### A.  Standard of Review

{¶ 9}   "The review of a motion to suppress is a mixed question of law and fact." *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, ¶ 32, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.  In evaluating the motion to suppress, the trial court acts as the finder of fact and, therefore, is in the best position to resolve factual questions

and evaluate the credibility of witnesses. *Burnside* at ¶ 8. Therefore, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id. See also State v. Johnson*, 10th Dist. No. 13AP-637, 2014-Ohio-671, ¶ 6 ("We apply a de novo standard in determining whether the trial court properly denied appellant's motion to suppress."). Furthermore, the Supreme Court of Ohio has stated that "when a reviewing court determines that a warrant should not have been issued, it must then determine whether the good-faith exception applies, and that question is a question of law, subject to de novo review by the appellate court." *Castagnola* at ¶ 32, citing *United States v. Leary*, 846 F.2d 592, 606 (10th Cir.1988).

## B. Constitutional Protections

{¶ 10} The Fourth Amendment to the United States Constitution, applied to the states through the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or other things to be seized." The Ohio Constitution contains a nearly identical provision. Ohio Constitution, Article I, Section 14. *See also* R.C. 2933.22(A); Crim.R. 41(C). Article I, Section 14 of the Ohio Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the person and things to be seized.

{¶ 11} Historically, the protections afforded by Article I, Section 14 of the Ohio Constitution have been construed as coextensive with the protections of the Fourth Amendment of the United States Constitution. *State v. Geraldo*, 68 Ohio St.2d 120, 125-26 (1981) ("[W]e are disinclined to impose greater restrictions in the absence of explicit state constitutional guarantees protecting against invasions of privacy that clearly transcend the Fourth Amendment. * * * It is our opinion that the reach of Section 14, Article I, of the Ohio Constitution * * * is coextensive with that of the Fourth

Amendment."); *State v. Robinette*, 80 Ohio St.3d 234, 239 (1997) (stating that courts "should harmonize * * * interpretation of Section 14, Article I of the Ohio Constitution with the Fourth Amendment, unless there are persuasive reasons to find otherwise"); *State v. Jones*, 88 Ohio St.3d 430, 434 (2000), *modified by State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931. However, it is well-recognized that states may "rely on their own constitutions to provide broader protection for individual rights, independent of protections afforded by the United States Constitution." *Robinette* at 238. *See Arnold v. Cleveland*, 67 Ohio St.3d 35, 38 (1993), paragraph one of the syllabus ("In the areas of individual rights and civil liberties, the United States Constitution, where applicable to the states, provides a floor below which state court decisions may not fall."). Thus, in certain circumstances, the Supreme Court has construed Article I, Section 14 of the Ohio Constitution as providing greater protection than the Fourth Amendment to the United States Constitution. *Brown* at ¶ 22; *State v. Brown*, 143 Ohio St.3d 444, 2015-Ohio-2438, ¶ 23 ("Article I, Section 14 of the Ohio Constitution affords greater protection than the Fourth Amendment against searches and seizures conducted by members of law enforcement who lack authority to make an arrest."). *See Robinette* at 238 (noting that a "state may impose greater restrictions on police activity pursuant to its own state constitution than is required by federal constitutional standards").

### C. Search Warrant

{¶ 12} We first consider appellant's contentions with regard to the search warrant. When determining whether a search warrant affidavit demonstrates probable cause, a magistrate must " 'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *State v. George*, 45 Ohio St.3d 325 (1989), paragraph one of the syllabus, quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). An appellate court reviewing the sufficiency of probable cause contained in an affidavit must not substitute its judgment for that of the magistrate but, rather, ensure that the magistrate "had a substantial basis for concluding that probable cause existed." *Id.* at paragraph two of the syllabus. A reviewing court undertakes this analysis with great deference to the magistrate's determination of probable cause,

recognizing that marginal cases should be resolved in favor of upholding the warrant. *State v. Neil*, 10th Dist. No. 14AP-981, 2016-Ohio-4762, ¶ 34, citing *George* at paragraph two of the syllabus.   The Supreme Court has held that "when no oral testimony is presented to the neutral and detached magistrate in conjunction with an affidavit for a search warrant, the probable-cause determination is based on the four corners of the document." *Castagnola* at ¶ 106.

{¶ 13} The Supreme Court has recognized that "[w]hile a probable-cause determination for an arrest warrant is similar in nature to that for a search warrant, a search-warrant inquiry is much more complex and presents special considerations." *Id.* at ¶ 34, citing 2 LaFave, *Search and Seizure*, Section 3.1(b) (5th Ed.2012).   Some of the special considerations that have been identified for courts to review when making a probable cause determination for the issuance of a search warrant include "how stale the information relied upon is, when the facts relied upon occurred, and whether there is a nexus between the alleged crime, the objects to be seized, and the place to be searched." *Id.*, citing 2 LaFave at Section 3.7(a), (b), and (d). Crim.R. 41(C) provides that an affidavit in support of a search warrant "shall * * * particularly describe the place to be searched, name or describe the property to be searched for and seized, state substantially the offense in relation thereto, and state the factual basis for the affiant's belief that such property is there located."  *See State v. Harry*, 12th Dist. No. CA2008-01-013, 2008-Ohio-6380, ¶ 16 (stating that Crim.R. 41(C) "requires that there be a 'nexus' between the place to be searched and the items to be seized").  *See also State v. Freeman*, 4th Dist. No. 06CA3, 2006-Ohio-5020, ¶ 13 (finding that "[t]he nexus between the items sought and the place to be searched depends upon all of the circumstances of each individual case, including the type of crime and the nature of the evidence"); *State v. Marler*, 2d Dist. No. 2007 CA 8, 2009-Ohio-2423, ¶ 26.

{¶ 14} Appellant contends that there "was no link between the controlled purchase[s] and [the residence] listed in the search warrant."  (Appellant's Brief at 11.) When considering whether a nexus exists between the alleged crime and the place to be searched, " 'the circumstances must indicate why evidence of illegal activity will be found in a particular place.' " *United States v. Washington*, 380 F.3d 236, 240 (6th Cir.2004), quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir.2004).  Furthermore, the

Sixth Circuit has held that "a nexus exists between a known drug dealer's criminal activity and the dealer's residence when some reliable evidence exists connecting the criminal activity with the residence." *United States v. Gunter*, 266 Fed.Appx. 415, 419 (6th Cir.2008). However, when "the only evidence of a connection between illegal activity and the residence is unreliable, such as uncorroborated statements by a confidential informant, then a warrant may not issue allowing the search of the residence." *Id.*, citing *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir.2005). *See also Carpenter* at 595 (finding that probable cause was not established where the connection between the residence and the evidence of criminal activity was too "vague, generalized, and insubstantial").

{¶ 15} Due to the fact-intensive nature of our inquiry, we begin our analysis by reviewing cases with similar fact patterns. In *United States v. Schultz*, 14 F.3d 1093 (6th Cir.1994), the court emphasized the need for reliable evidence connecting the criminal activity with the place to be searched. In *Schultz*, an individual who had been arrested for drug possession informed the arresting officer that a man named Schultz was his source for drugs. Upon further investigation, the officer found that some of the informant's information was correct. Using the phone number provided by the informant, the officer found that the number was listed to a woman in whose car Schultz had once been issued a traffic citation. Additionally, the officer found that Schultz had prior convictions for possession of marijuana products. Through a credit check and a grand jury subpoena, the officer discovered that Schultz maintained safe deposit boxes at a local bank. Based on that information, the officer sought and received a warrant to search the safe deposit boxes.

{¶ 16} In assessing probable cause, the court stated that "[i]n his affidavit for the first warrant, the only connection [the officer] made was that, 'Based on his training and experience, [he] believed ... that it is not uncommon for the records, etc. of such [drug] distribution to be maintained in bank safe deposit boxes.' " *Id.* at 1097. The court found that "[w]hile an officer's 'training and experience' may be considered in determining probable cause * * * it cannot substitute for the lack of evidentiary nexus in this case, prior to the search, between the safe deposit boxes and any criminal activity." *Id.* Although the court concluded that the warrant should not have been issued since the officer "did not

have anything more than a guess that contraband or evidence of a crime would be found in the boxes," it nevertheless applied the good-faith exception to the exclusionary rule. *Id.* at 1097-98.

{¶ 17} In *Washington*, an undercover police officer arranged to purchase drugs from an "unwitting" person, i.e., an unwitting who did not realize that he was dealing with police. *Id.* at 238. The unwitting arranged a meeting with his narcotics supplier. When the officer and the unwitting arrived at the designated meeting spot, the unwitting got out of his vehicle and entered a blue Cadillac that was driven by a black male. When the unwitting returned to his vehicle, he gave the undercover officer a bag of crack cocaine. The officer traced the license plate of the blue Cadillac and discovered it was registered to a woman at a local residence. Police began conducting surveillance of that residence.

{¶ 18} Four days later, the officer arranged for another drug purchase with the same unwitting. The supplier told the unwitting that he had to go pick up his car from the mechanic and then, immediately after the phone call, was observed emerging from the residence and getting a ride to a garage where he picked up the blue Cadillac. The supplier then drove the blue Cadillac to a meeting with the unwitting and the officer. The unwitting again met the supplier and returned with crack cocaine. The blue Cadillac was observed parked outside of the residence on two subsequent days.

{¶ 19} Based on that information, the officer sought a warrant to search the residence. In his affidavit, the officer stated that "based on his experience, individuals involved with drug trafficking commonly keep records, documents, and money close by." *Washington* at 239. Furthermore, the officer stated that the residence had been robbed within the last two months, which was, in his opinion, " 'indicative of suspects searching for narcotics and large sums of cash.' " *Id.*

{¶ 20} The court found that "[u]nder the facts of this case, the existence of probable cause is an extremely close call." *Id.* at 240. However, finding that the good-faith exception to the exclusionary rule applied, the court assumed without deciding that probable cause did not exist. Specifically, the court stated that "even assuming probable cause was not established, it is clear that the affidavit included enough facts with respect to the nexus between the criminal activity and the Crossgate residence to overcome the 'so lacking' hurdle." *Id.* at 242-43. However, the court also stated that "[t]here was a visible

nexus connecting [the defendant] to the house, [the defendant] to the Cadillac, and the Cadillac to the house." *Id.* at 243.

{¶ 21} In *Gunter*, the court examined a search warrant affidavit that detailed two controlled drug transactions between a confidential informant and the defendant. In the first controlled purchase, agents used a covert transmitter to listen as the informant purchased cocaine from the defendant. Following the transaction, an agent conducted a driver's license and vehicle registration inquiry on the defendant, which revealed the address of the defendant's residence and indicated that the defendant owned several vehicles, including two Cadillacs. Five days after the first controlled drug transaction, agents initiated a second controlled drug transaction using the confidential informant. Around the same time that the informant called the defendant to initiate the transaction, agents observed the defendant arrive at his residence in a Cadillac and then depart after only two to three minutes. Agents followed the Cadillac as it stopped at another residence and then traveled to the site where the controlled purchase was conducted.

{¶ 22} Thereafter, an agent sought and received a warrant to search the defendant's residence for drugs, evidence of drug transactions, and firearms based on the above facts and the agent's experience in over 100 investigations of drug trafficking. On review, the court found that the close temporal proximity between the defendant's return to his residence and the subsequent controlled drug transaction "provided a neutral magistrate with a substantial basis to conclude that Defendant may have stopped at his residence to pick up some of his merchandise before meeting his customer at another location." *Id.* at 419. Therefore, the court found that temporal proximity of the return to his residence "combined with the affiant's statements that he has significant experience in narcotics investigations, is sufficient to establish a nexus between Defendant's illegal activities and his residence." *Id.*, citing *United States v. Caicedo*, 85 F.3d 1184, 1193 (6th Cir.1996).

{¶ 23} Finally, in *United States v. Brown*, 6th Cir. No. 13-1761 (June 27, 2016), the court examined a search warrant that was issued for a residence of a known drug dealer. In that case, the affidavit submitted in support of the search warrant stated that the defendant was an active participant in the attempted delivery of heroin, the defendant had a felony drug-trafficking history, the defendant resided at a known address, a drug

dog had alerted to the odor of narcotics in the defendant's vehicle, and the vehicle was registered to the defendant at his residence. Additionally, the affidavit noted the discovery of a message recorded on a phone that was believed to belong to the defendant. In the detective's opinion, the phone message was consistent with drug-trafficking communications. The affidavit further stated that the residence would contain the fruits or other evidence of a conspiracy to distribute heroin.

{¶ 24} On review of the facts contained within the affidavit, the court noted that the affidavit "contained no evidence that [the defendant] distributed narcotics from his home, that he used the residence to store narcotics, or that any suspicious activity had taken place there." *Id.* Furthermore, the affidavit "did not suggest that a reliable confidential informant had purchased drugs [at the defendant's residence], that the police had ever conducted surveillance at [the defendant's residence], or that the recorded telephone conversations linked drug trafficking to [the defendant's] residence." *Id.* Although the court found the facts in the affidavit supported a search of the defendant's vehicle based on its location outside the home of a suspected heroin trafficker and the fact that a drug dog had alerted to the odor of narcotics in the vehicle, the facts did not establish a fair probability that evidence of drug trafficking would be found at the defendant's residence. In order to establish probable cause, the court found that "[a] more direct connection was required, such as surveillance indicating that [the defendant] had used the car to transport heroin from his home [to the location where the drug transaction occurred] on the day in question. The mere fact that the car was registered to [the defendant's] home was too vague and generalized a nexus to support the search warrant." *Id.* The court concluded that "as a general matter, that if the affidavit fails to include facts that directly connect the residence with the suspected drug dealing activity, or the evidence of this connection is unreliable, it cannot be inferred that drugs will be found in the defendant's home—even if the defendant is a known drug dealer." *Id.*

{¶ 25} Here, mindful of the deference given to a neutral magistrate's decision regarding the existence of probable cause, we find that, considering the totality of the circumstances, the affidavit in this case sets forth sufficient facts to establish a nexus between the alleged criminal activity and the residence. Importantly, immediately following the first drug transaction, officers observed that appellant went directly to the

residence and walked inside. Additionally, like in *Gunter*, officers observed that appellant left the residence immediately before proceeding to the site where the second controlled drug transaction occurred. The affidavit also stated that it was believed that appellant was living at the residence. This belief was based on surveillance which revealed that the vehicle used by appellant during both controlled drug transactions was at the residence "on four separate days and [had] been seen at the location as early as 7:00am." (State's Ex. A at 6.)

{¶ 26} Additionally, the affidavit in support of the warrant stated that the confidential informant was considered reliable and had "provided information in the past leading to arrests and a search warrant resulting in the recovery of illegal narcotics and cash." (State's Ex. A at 4.) Furthermore, the affidavit described Detective Grinstead's significant experience in narcotics investigations, including "several hundred drug related arrests and investigations." (State's Ex. A at 6.) The temporal proximity between appellant's arrivals to the residence and the controlled drug transactions, combined with Detective Grinstead's experience in narcotics investigations, provided the magistrate with a substantial basis to conclude that a nexus existed between the place to be searched and the alleged criminal activity, and, at the least, probable cause to believe the proceeds of a drug transaction would be located in the residence. *See Gunter* at 419; *United States v. Ellison*, 632 F.3d 347, 349 (6th Cir.2011) (finding nexus between residence and criminal activity where a "confidential informant had observed someone come out of [the defendant's] residence, engage in a drug transaction, and then return into the residence").

{¶ 27} Therefore, considering the totality of the circumstances and recognizing that marginal cases should be resolved in favor of upholding the warrant, we conclude that the issuing magistrate had a substantial basis to conclude that probable cause existed for the issuance of a search warrant. *George* at paragraph two of the syllabus.

### D.  Warrantless Arrest

{¶ 28} Next, we consider appellant's assertion that the trial court erred in finding that his arrest prior to the execution of the search warrant was proper.

{¶ 29} "A warrantless arrest that is based upon probable cause and occurs in a public place does not violate the Fourth Amendment." *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, ¶ 66, citing *United States v. Watson*, 423 U.S. 411 (1976). *See United*

*States v. Wright*, 16 F.3d 1429, 1438 (6th Cir.1994), quoting *Watson*; *Caicedo* at 1192. R.C. 2935.04 provides that "[w]hen a felony has been committed, or there is reasonable ground to believe that a felony has been committed, any person without a warrant may arrest another whom he has reasonable cause to believe is guilty of the offense, and detain him until a warrant can be obtained." Probable cause for a warrantless arrest exists "if all the facts and circumstances within the officer's knowledge were sufficient to cause a prudent person to believe that the individual has committed or was committing an offense." *State v. Dingess*, 10th Dist. No. 01AP-1232, 2002-Ohio-2775, ¶ 9, citing *Ornelas v. United States*, 517 U.S. 690, 696 (1996); *State v. Grayson*, 8th Dist. No. 102057, 2015-Ohio-3229, ¶ 19 ("A warrantless arrest does not require the officer's absolute knowledge that a crime has been committed; it requires only a reasonable belief based on the totality of the circumstances."); *Brown*, 2007-Ohio-4837, at ¶ 66, citing *Gerstein v. Pugh*, 420 U.S. 103, 111-12 (1975) ("A reasonably prudent person must, at the time of arrest, believe that the person placed under arrest was committing or had committed a criminal offense."). As with consideration of probable cause for the issuance of a search warrant, in determining whether probable cause to arrest existed, a reviewing court should examine the totality of the circumstances. *Dingess* at ¶ 9, citing *Gates* at 230-31.

{¶ 30} In challenging his arrest, appellant asserts that "the police never obtained a warrant to arrest [a]ppellant and there was no reasonable suspicion or probable cause to pull over the [a]ppellant." (Appellant's Brief at 15.) Additionally, appellant asserts that he was pulled over without any reason provided for the stop and that the search incident to the arrest was unreasonable and was not predicated on probable cause.

{¶ 31} Here, we agree with the trial court's determination that the detention of appellant's vehicle and his subsequent arrest were justified as officers had probable cause to arrest him. As previously noted, appellant was identified as having participated in two recent drug transactions. Based on the facts and circumstances that were known at the time of appellant's detention, a reasonably prudent person would believe that appellant had committed an offense. Therefore, under the totality of the circumstances, probable cause existed to arrest appellant. Although appellant claims that probable cause did not exist to arrest him, he fails to cite to any portion of the record or other authority in

support of his position.  Accordingly, we find his contentions regarding his detention to be without merit.

{¶ 32} Having found appellant's contentions regarding the issuance of the search warrant and his detention to be without merit, we overrule appellant's assignment of error.

## IV.  Conclusion

{¶ 33} Having overruled appellant's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK and HORTON, JJ., concur.

————————————