[Cite as *State v. Simpson*, 2024-Ohio-3116.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230432 |
| | | TRIAL NO. B-2205178 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| CHRIS SIMPSON, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: August 16, 2024


*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Keith Sauter,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Sarah E. Nelson,* Assistant Public Defender, for Defendant-Appellant.

**ZAYAS, Presiding Judge.**

{¶1}   Chris Simpson was convicted, after pleading no contest, of ten counts of trafficking in various drugs.  Prior to pleading no contest, Simpson filed a motion to suppress the evidence found in his storage unit, arguing that the affidavit in support of the warrant did not establish probable cause.  After the court overruled the motion to suppress, Simpson pled no contest to the charges.  On appeal, Simpson contends that the trial court erred in overruling his motion to suppress.  For the following reasons, we affirm the judgment of the trial court.

### Factual Background

{¶2}   On October 25, 2022, following a traffic stop, Simpson was arrested for trafficking in and possession of heroin, cocaine, fentanyl-related compounds, and tramadol.  Upon his arrest, Simpson requested to speak with Cincinnati police officers about cooperating for case consideration.  During his police interview, Simpson admitted to the charged offenses, consented to a search of his phone, and provided information regarding suppliers of the drugs.

{¶3}   After the police interview, Simpson was incarcerated in the jail, and Cincinnati police investigator Molly Shust monitored his jail calls.  In phone calls with his girlfriend and sister, Simpson instructed them to retrieve a set of keys that were in his vehicle that had been impounded by the Colerain police after his arrest.  The keys included "red keys" that would unlock his storage unit and a key to unlock a safe contained in the storage unit.  In one specific call, "Simpson repeatedly asked his sister and his girlfriend to go to the storage unit quickly to retrieve items."  He informed them of the location and number of the unit and shared the access code to enter the facility.

2

{¶4} Shust confirmed with an employee of the storage facility that Simpson had recently rented storage unit # 1207 at iStorage located on Moellering Ave. Shust also confirmed with Colerain police that a set of red keys and a safe key were recovered from the vehicle upon Simpson's arrest. Based on this information, Shust requested and obtained a search warrant for drugs, safes, drug paraphernalia, leasing and payment documentation, surveillance video, currency, financial records, and weapons contained in the storage unit. The affidavit in support of the warrant included that based on her six years of training and experience as a narcotics investigator, drug traffickers commonly maintain storage units to store contraband and its proceeds, illegal drugs, weapons to facilitate trafficking, packaging material, records, phones, paraphernalia, and currency derived from illegal drug sales. The warrant was executed, and officers found drugs and cash in the unit.

{¶5} Simpson filed a motion to suppress the evidence contending that the affidavit lacked a factual basis to establish probable cause to search the storage unit. The state filed a response, and both parties waived a hearing on the motion and submitted on the arguments contained in the pleadings.

{¶6} The trial court made the following factual findings:

In this case, Simpson had admitted to and was already charged with drug trafficking. While Simpson was being held in the jail, the affiant officer monitored Simpson's telephone calls. In the calls, Simpson provided specific information to his sister and girlfriend, which was further investigated and confirmed by the officer. Simpson also expressed an urgency for his sister and girlfriend to take steps to retrieve items from the safe located in his storage unit, which was further

evidence that the unit contained contraband.

**{¶7}** In overruling the motion to suppress, the court concluded that, "In applying a totality-of-the-circumstances analysis to the facts provided, the issuing judge's determination of probable cause was sufficient to issue the warrant."

## The Search Warrant and Affidavit

**{¶8}** In his sole assignment of error, Simpson contends that the trial court erred in denying his motion to suppress because the affidavit was insufficient to support a finding of probable cause.

**{¶9}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. When ruling on a motion to suppress, this court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. *See id.* "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.* When the trial court has denied the motion to suppress, "we review all evidence in a light most favorable to the Government." *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006).

**{¶10}** When a reviewing court determines that a warrant should not have been issued, it must then determine whether the good-faith exception applies, and that question is a question of law, subject to de novo review by the appellate court. *State v. Castagnola*, 2015-Ohio-1565, ¶ 32, citing *United States v. Leary*, 846 F.2d 592, 606 (10th Cir. 1988).

**{¶11}** The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution provide that search warrants may only be issued

upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the person and/or things to be seized. *See State v. Jones*, 2015-Ohio-483, ¶ 11. In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place . . . ." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). An affidavit supporting a warrant need only contain a minimum connection between the place to be searched and the alleged criminal activity. *State v. Schubert*, 2022-Ohio-4604, ¶ 10.

{¶12} In contrast, "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Gates* at 238-239, quoting *Jones v. United States*, 362 U.S. 257, 271, (1960); *Castagnola* at ¶ 35. In reviewing whether a search warrant has been issued upon probable cause, courts must examine the totality of the circumstances. *Jones* at ¶ 15. Appellate courts "should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *State v. George*, 45 Ohio St.3d 325 (1989), paragraph two of the syllabus; *Jones* at ¶ 14.

{¶13} Simpson contends that the affidavit lacked a sufficient nexus connecting the storage unit to evidence of drugs and was based on generalized assumptions regarding drug trafficking. In making this argument, Simpson relies on *State v. Perez*, 2015-Ohio-1753 (2d Dist.), which held that "the supporting affidavit must establish a

specific factual basis (as opposed to generalities) from which the magistrate is able to conclude there is a fair probability that evidence of the suspected illegal activity will be discovered." *Id.* at ¶ 16.

**{¶14}** In *Perez*, the investigating officer obtained a search warrant to search Perez's home and vehicles after using a confidential informant to purchase drugs from Perez. *Id.* at ¶ 2. A search of the home yielded 1.5 pounds of marijuana, approximately $1,600 in United States currency, digital scales, Suboxone, grinder and pipe, and other drug paraphernalia. *Id.* In Perez's truck, the officers found an envelope containing a welcome packet from a storage facility and two small keys under the envelope. *Id.* The officer confirmed that Perez had rented a storage locker at the facility, and the two keys were issued by the facility for the locker. *Id.* Based on that information, the officer obtained and executed a search warrant for the storage locker. *Id.*

**{¶15}** On appeal, the Second District affirmed the trial court's judgment that the warrant was not based on probable cause, "as the affidavit in support fails to provide additional evidence, other than the Defendant's lease of the storage locker, which would indicate that it would contain evidence of drug trafficking." *Id.* at ¶ 6. The court explained that "[o]ther than finding the keys to a storage facility inside the vehicle of the Defendant, and the detectives' assumptions as to how drug traffickers "usually operate", there was no link between the Defendant's illegal activities within his home and a fair probability that the storage locker would contain illegal narcotics and/or paraphernalia." *Id.* at ¶ 13.

**{¶16}** Here, in addition to the general averments based on Shust's training and experience, the affidavit contained sufficient facts to indicate a fair probability that evidence of the crimes of drug trafficking and/or possession would be found in the

storage unit. The verifiable facts, included: (1) Simpson was charged with and admitted to multiple possession and trafficking offenses; (2) while incarcerated, Shust was monitoring his jail calls; (3) during a jailhouse call, Simpson informed his sister and girlfriend that he had a storage unit that contained a safe; (4) he informed them that the keys to the unit and safe were in his car, which had been impounded by Colerain police; (5) Simpson divulged the name and address of the storage facility, his unit number, and the code to enter the facility; (6) Simpson repeatedly expressed an immediate urgency for his sister and girlfriend to retrieve items from the safe and storage unit; (7) the officer confirmed that the keys had been found in Simpson's vehicle; and (8) the officer confirmed with the facility that Simpson had recently rented the specific unit relayed to Simpson's sister and girlfriend.

{¶17} From the affidavit, it is reasonable to infer that Simpson attempted to have his sister and girlfriend remove evidence of his drug trafficking from his storage unit. Thus, Simpson's urgent requests to retrieve items from the storage unit established the evidentiary link between the suspected drug activity and the storage unit, and the court had a substantial basis for finding probable cause for the issuance of the warrant.

{¶18} Having determined that the court had a substantial basis for finding probable cause, this court need not determine whether the good-faith exception applies. *See Castagnola*, 2015-Ohio-1565, at ¶ 32.

{¶19} We overrule the assignment of error.

### Conclusion

**{¶20}** Having overruled Simpson's sole assignment of error, we affirm the judgment of the trial court.

Judgment affirmed.

**BERGERON** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its own entry this date.