[Cite as *State v. Madaris*, 2026-Ohio-2305.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                    :         APPEAL NO.    C-250396
                                            TRIAL NO.     B-2201100
     Plaintiff-Appellee,       :

  vs.                            :

ANTHONY MADARIS,                 :
                                                 *JUDGMENT ENTRY*
     Defendant-Appellant.      :


     This cause was heard upon the appeal, the record, and the briefs.

     For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

     Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

     The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.


**To the clerk:**

**Enter upon the journal of the court on 6/18/2026 per order of the court.**


**By:**_____
      **Administrative Judge**

[Cite as *State v. Madaris*, 2026-Ohio-2305.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-250396 |
| | | TRIAL NO. | B-2201100 |
| Plaintiff-Appellee, | : | | |
| vs. | : | *O P I N I O N* | |
| ANTHONY MADARIS, | : | | |
| Defendant-Appellant. | : | | |


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: June 18, 2026


*Connie Pillich*, Hamilton County Prosecuting Attorney, and *John D. Hill, Jr.,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Timothy J. McKenna*, for Defendant-Appellant.

**ZAYAS, Presiding Judge.**

{¶1} After a jury trial, Anthony Madaris was convicted of possession of a fentanyl-related compound with a major-drug-offender ("MDO") specification and aggravated possession of drugs. After a three-month investigation involving a confidential informant ("CI"), Madaris was charged with trafficking and possession of a fentanyl-related compound with MDO specifications, and aggravated trafficking and possession of drugs. A jury acquitted him of the trafficking charges and convicted him of the possession charges, one with an MDO specification.

{¶2} In four assignments of error, Madaris argues that the trial court erred in overruling his motion to suppress because the search warrant affidavit lacked probable cause and failed to provide a nexus between the property to be searched and the items to be seized, the court erred in overruling his motion in limine, and his convictions were not supported by sufficient evidence and contrary to the weight of the evidence. For the following reasons, we affirm the judgment of the trial court.

## Motion to Suppress

{¶3} In his first assignment of error, Madaris contends that the trial court erred in overruling his motion to suppress because the search warrant affidavit lacked probable cause and failed to provide a nexus between the property to be searched and items to be seized. Madaris argues that the warrant lacked probable cause to search the residence because no suspected drug activity or trafficking was alleged to have occurred at the residence.

{¶4} The affiant, the primary investigating officer, submitted an eight-page affidavit detailing the investigation and the factual basis for the search of the car and residence. The affidavit stated that the investigation began in late September of 2021 and continued through December 20, 2021. On that date, he sought the warrant.

During the investigation, the officers obtained four additional warrants from various judges for historical records, electronic surveillance, permission to use GPS tracking on vehicles, and Real Time Precision GPS Tracking (Phone PING data). The investigation involved recorded Facetime calls between a CI and Madaris, several drug deals between the two, several residences of relatives of Madaris, and multiple vehicles, with two registered to females associated with Madaris.

{¶5} Prior to December 2, 2021, law enforcement observed Madaris engage in drug transactions with a CI while driving a 2015 Nissan. The Nissan was registered to a female associated with Madaris. During the week of November 21, the GPS tracker data showed a different driving pattern for the Nissan. It no longer frequented the West End neighborhood where officers had observed Madaris engaged in drug transactions.

{¶6} On December 2, officers observed Madaris drive a white Ford Fusion and park in the parking lot in front of an Ezzard Charles apartment and enter Apartment C with a key. This was the same address where Madaris had arranged and completed a drug transaction with the CI, and the address where his brother resided.

{¶7} On December 7, the affiant reviewed the GPS data for Madaris's phone number, which showed the phone was in the Norwood area. Based on the GPS data from the gray 2015 Nissan, the affiant learned of a frequented address of a home on Alvina Ave. After reviewing Madaris's top callers on his cell phone, officers learned of a female, R.J., who was Madaris's second most frequent caller. R.J. resided at the Alvina address, and the white Ford Fusion was registered in her name. Between September 3 and December 2, Madaris either called or received a call from the female 1,091 times. The affiant drove to the Alvira location and observed the white Ford Fusion. The vehicle matched the car the affiant had observed Madaris driving on

December 2. The affiant believed that Madaris was in a relationship with R.J. Officers had observed the two of them together, and Madaris consistently stayed overnight at the Alvina residence.

{¶8} During the week of December 5, officers directed the CI to make another recorded and monitored Facetime call to Madaris to schedule another fentanyl purchase. Madaris arrived at the meeting location, driving the white Ford Fusion. Following the drug exchange, Madaris returned to the white Ford Fusion.

{¶9} On December 13, officers believed an unknown male entered the Fusion to complete a drug transaction with Madaris. The next day, officers observed a male enter into the Ford Fusion for nine minutes then exit from the vehicle, and the Fusion drove away. Based on his extensive experience and training in drug transactions, affiant believed that the car was used to facilitate illegal drug transactions.

{¶10} After Madaris left, he drove to a self-storage unit and returned to the unit later that morning. In affiant's experience, drug dealers use storage units to store illegal drugs and proceeds of trafficking. The affiant believed that Madaris retrieved drugs from the Fusion to be sold inside the building. Agents had previously observed Madaris return to that address after controlled purchases. When Madaris left in the Fusion, he drove to the Alvina residence. Officers observed him park the vehicle in front of the Alvina residence, pause at the front door, as if he were using a key, then enter the home. On multiple occasions, surveillance units had observed the Ford Fusion at the residence.

{¶11} That same day, a Drug Enforcement Administration ("DEA") officer obtained the rental agreement for the storage unit, and the unit belonged to Madaris with the same phone number used by the CI to contact Madaris. The following day, the DEA agent's canine alerted to the odor of illegal drugs emitting from the storage

5

unit.

{¶12} Affiant believed that Madaris used the Alvina address, among others, to facilitate drug trafficking. The warrant sought to search the apartment, Madaris, and the Ford Fusion for drugs, paraphernalia associated with the sale of drugs, including scales and packaging materials, currency, records or mail, electronic devices such as tablets and cell phones, and weapons. A judge signed the search warrant.

{¶13} The search warrant inventory of items seized from the residence included two bags of off-white powder, a sandwich bag box with two bags of off-white powder, a black iPhone, a digital scale, an LG cellphone, an Amazon tablet, a bag of sugar, and miscellaneous keys.

{¶14} Madaris sought to suppress all of the evidence seized from the Alvina residence, alleging that the warrant lacked probable cause to search the residence because the affidavit failed to establish a sufficient nexus between the criminal activity and the residence. The court denied the motion on the record. After reviewing the warrant and affidavit and considering the pleadings, the court found that the affidavit established a nexus between Madaris, his criminal activity, and the residence sufficient to raise a fair probability that evidence would be found at the residence. The court further found that the officers conducted the search in good-faith reliance on the warrant.

{¶15} Review of a motion to suppress involves a mixed question of law and fact. *State v. Simpson*, 2024-Ohio-3116, ¶ 9 (1st Dist.). We must defer to the trial court's factual findings if supported by competent, credible evidence. *Id.* Then, we independently determine whether the facts satisfy the applicable legal standard. *Id.*

{¶16} Under the Fourth Amendment, search warrants may only be issued upon probable cause, supported by oath or affirmation, particularly describing the

place to be searched and the person and items to be seized. In determining the sufficiency of the affidavit, the duty of a judge or magistrate is to "make a practical, common-sense decision" as to "whether given all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. George*, 45 Ohio St.3d 325 (1980), paragraph one of the syllabus, citing *Illinois v. Gates*, 462 U.S. 213, 238-239 (1983). "[I]t is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'" *Id.* at 329, quoting *Gates* at 235. A trial court's probable-cause determination is entitled to great deference and doubtful cases must be resolved in favor of upholding the warrant. *State v. Jones*, 2015-Ohio-483, ¶ 13-14.

{¶17} The affidavit supporting the search warrant must set forth adequate facts to establish a nexus between the place to be searched and the evidence sought, which depends on the facts and circumstances of each individual case. *State v. England*, 2005-Ohio-375, ¶ 9-10 (1st Dist.). The necessary nexus need not be established by direct evidence. *Id.* at ¶ 9. "[A] nexus exists between a known drug dealer's criminal activity and the dealer's residence when some reliable evidence exists connecting the criminal activity with the residence." *State v. Young*, 2019-Ohio-4639, ¶ 18 (10th Dist.), quoting *State v. Phillips*, 2016-Ohio-5944, ¶ 14 (10th Dist.). "When 'the only evidence of a connection between illegal activity and the residence is unreliable, such as uncorroborated statements by a confidential informant, then a warrant may not issue allowing the search of the residence.'" *Phillips* at ¶ 14, citing *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005).

{¶18} However, we need not determine whether the affidavit provided a sufficient nexus to the home because the officers conducted the search in good-faith

7

reliance on the warrant, as the trial court determined. "When police act under a warrant that is invalid for lack of probable cause, the exclusionary rule does not apply if the police acted 'in objectively reasonable reliance' on the subsequently invalidated search warrant." *Herring v. United States*, 555 U.S. 135, 139-140 (2009), quoting *United States v. Leon*, 468 U.S. 897, 922 (1984).

**{¶19}** Under the good-faith exception, suppression is appropriate when (1) the judge was misled by statements the affiant knew were false, (2) the issuing judge wholly abandoned his role, (3) the affidavit is so lacking in indicia of probable cause, no officer could reasonable rely upon it, and (4) the warrant failed to state with particularity the place to be searched and the items seized. *Leon* at 923. "The purpose of excluding evidence obtained with a defective warrant is to deter and remedy deliberate, intentional, reckless, or grossly negligent conduct by law enforcement." *State v. Wharton*, 2025-Ohio-4485, ¶ 17 (5th Dist.). "Because the exclusionary rule's purpose is to deter unlawful police conduct, evidence should be suppressed 'only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.'" *Leon* at 919, quoting *United States v. Peltier*, 422 U.S. 531, 542 (1975).

**{¶20}** Here, Madaris does not contend, and the record does not support, that the police exhibited deliberate, reckless, or grossly negligent conduct, judicial abandonment, or lack of specificity regarding the places to be searched and the items to be seized. Madaris simply contends the good-faith exception is inapplicable here because the "affidavit reported no suspected drug use or activity at the Alvina address."

**{¶21}** Under *Leon*, good-faith reliance on a warrant needs a "minimally sufficient nexus" between the site of the search and the evidence sought. *State v. Schubert*, 2022-Ohio 4604, ¶ 12, citing *United States v. Carpenter*, 360 F.3d 591, 596

(6th Cir. 2004). An affidavit supporting the warrant must evince a minimum connection, which "means only some modicum of evidence, however slight, that connects the criminal activity described in the affidavit to the item or place searched." *Id.* at ¶ 1. "This is not a difficult standard to meet." *Id.* An affidavit must rely on more than mere suspicions or conclusions and provide "underlying factual circumstances regarding veracity, reliability, and basis of knowledge" that successfully establish "some connection between the illegal activity and the place to be searched." (Citations omitted.) *Id.* at ¶ 10.

{¶22} The affidavit in this case contained specific factual allegations tying the defendant's drug transactions to the vehicle. The affidavit included details of the ongoing three-month investigation, including controlled buys, the discovery that Madaris was driving the Fusion registered to R.J., and law enforcement databases showing R.J. lived at the Alvina address. Surveillance, cell phone data and observations placed Madaris and the Fusion at the residence on multiple occasions. Law enforcement observed Madaris arriving and leaving drug transactions while driving the Fusion and engaging in suspected drug transactions in the vehicle.

{¶23} The affidavit provided a minimally sufficient nexus between the offenses under investigation and the need to search the home. The warrant was not so facially deficient in its particularity that the officers could not reasonably presume it to be valid. Therefore, the officers acted in objectively reasonable reliance on the warrant.

{¶24} Accordingly, we overrule the first assignment of error.

### Other-Acts Evidence

{¶25} In his second assignment of error, Madaris contends that the trial court erred when it denied his motion in limine and allowed several text messages into

evidence in violation of Evid.R. 404(B) and 403. Madaris challenges two text messages that he received on the day of the search, one he received on December 10, and one he received on December 7.

**{¶26}** Evid.R. 404(B)(1) categorically prohibits evidence of a defendant's other acts when introduced to show that the defendant has the character or propensity to commit a crime. Other-acts evidence is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B)(2). "The key is that the evidence must prove something other than the defendant's disposition to commit certain acts." *State v. Smith*, 2020-Ohio-4441, ¶ 36, quoting *State v. Hartman*, 2020-Ohio-4440, ¶ 22.

**{¶27}** The Ohio Supreme Court provided guidance for courts to use in assessing whether other-acts evidence is admissible for a proper purpose. *Id.* at ¶ 19. First, a court must determine whether the evidence is relevant to the purpose for which it is offered and whether it is relevant to an issue that is material to the case. *Id.* at ¶ 26-27. This step is reviewed de novo. *Id.* at ¶ 22; *State v. Echols*, 2024-Ohio-5088, ¶ 30 ("The determination of whether other-acts evidence is admitted for a permissible purpose is a question of law, which we review de novo.").

**{¶28}** Next, the court must consider whether the probative value of the evidence "is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." *Smith* at ¶ 29; Evid.R. 403(A). "As the importance of the factual dispute for which the evidence is offered to the resolution of the case increases, the probative value of the evidence also increases and the risk of *unfair* prejudice decreases." (Emphasis in original.) *Smith* at ¶ 31. The trial court's determination as to whether the probative value of the evidence exceeds its prejudicial effect is reviewed for an abuse of discretion. *Id.* at ¶ 30; *Echols* at ¶ 39.

10

**{¶29}** Madaris challenges two text messages, sent during the execution of the search warrant, stating, "Can you do me 2gs for 90," and "getting off Reading." Madaris argues that the texts were unrelated to the charged offenses. Madaris also challenges a text from the same individual on December 10 asking, "How much money you got in dope," and a text he received on December 7, from another individual that stated, "[T]hat stuff wasn't quite strong enough. I know you said you had some white." Madaris contends that all of the texts were inadmissible other-acts evidence.

**{¶30}** The State argues that the first two texts were not other-acts evidence because the evidence directly proved that Madaris had the intent and knowledge to sell the drugs he possessed on that day, a necessary element to establish the charged offenses. The texts established that Madaris had arranged to sell the drugs moments before the search began, and that the buyer was a few blocks from the home. Therefore, the first two texts established an element of the offenses Madaris was charged with.

**{¶31}** Evidence that goes directly to the charged offense is not other-acts evidence. *See Echols*, 2024-Ohio-5088, at ¶ 24 (1st Dist.). Evid.R. 404(B) limits the admission of evidence that is "extrinsic" to the charged offenses, and conduct intrinsic to the alleged crimes is not other-acts evidence. *See State v. Reardon*, 2018-Ohio-1935, ¶ 48 (5th Dist.) (evidence that relates to the counts charged in the indictment and the circumstances surrounding the prosecution, leaves this evidence outside the purview of Evid.R. 404(B)). Here, the first two text messages are evidence that Madaris intended to sell the drugs he possessed on December 21. The trial court correctly found that these texts were admissible to prove knowledge and intent, essential elements of the trafficking charges.

**{¶32}** The State contends that the December 1 and 10 texts showed Madaris's

intent, knowledge, preparation, and plan to sell narcotics, close in time to the charged offenses. Assuming, without deciding, that the court erred in admitting the December 1 and 10 texts, any error was harmless.

**{¶33}** Harmless error is "any error, defect, irregularity, or variance which does not affect substantial rights." *State v. Kamer*, 2022-Ohio-2070, ¶ 154 (6th Dist.); Crim.R. 52(B).

> When determining whether a trial court's improper admission of other-acts evidence affected the substantial rights of a defendant, an appellate court must (1) determine whether the error prejudiced the defendant (i.e., the error affected the verdict), (2) declare a belief that the error was not harmless beyond a reasonable doubt, and (3) excise the improper evidence from the record, look to the remaining evidence, and determine whether there is evidence beyond a reasonable doubt of defendant's guilt.

*Id.* at ¶ 155, citing *State v. Harris*, 2015-Ohio-166, ¶ 37.

**{¶34}** Here, the State sought to admit the texts to prove Madaris's intent, knowledge, preparation, and plan to sell narcotics. The text messages did not affect the verdict because Madaris was acquitted of the trafficking charges.

**{¶35}** We overrule the second assignment of error.

### Sufficiency and Manifest Weight

**{¶36}** In his third and fourth assignments of error, Madaris argues that his convictions were not supported by the evidence and contrary to the weight of the evidence.

**{¶37}** When a defendant challenges the sufficiency of the evidence, "the question is whether, after viewing the evidence in the light most favorable to the state,

any rational trier of fact could have found all the essential elements of the crime proved beyond a reasonable doubt." *State v. Ham*, 2017-Ohio-9189, ¶ 19 (1st Dist.), citing *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶38}** In reviewing a challenge to the weight of the evidence, we review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). The credibility of the witnesses is primarily a determination for the trier of fact. *State v. Brown*, 2024-Ohio-2148, ¶ 17 (1st Dist.), citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. "The trier of fact is best able 'to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *Id.*, quoting *State v. Wilson*, 2007-Ohio-2202, ¶ 24.

**{¶39}** Madaris contends that the State failed to prove he constructively possessed the narcotics because nothing on the BWC video showed him in the room with the drugs, no photos or video portrayed him bringing the drugs into the home, and his DNA was not on the drugs.

**{¶40}** Constructive possession exists when a person has knowledge of an illegal item and the ability to exercise dominion or control over the item or the premises on which the item is found. *See State v. Williams*, 2023-Ohio-4667, ¶ 13 (1st Dist.), quoting *State v. Harris*, 2013-Ohio-484, ¶ 18 (8th Dist.). "A person is in 'constructive possession' if he is able to exercise dominion and control over an item, even if he does not have immediate physical possession of it." *State v. DeVaughn*, 2020-Ohio-651, ¶ 32 (1st Dist.).

**{¶41}** Constructive possession may be demonstrated through circumstantial

evidence. *See State v. English*, 2010-Ohio-1759, ¶ 32 (1st Dist.). A readily accessible drug in close proximity to the accused constitutes circumstantial evidence that the accused constructively possessed the drugs. *See State v. Fultz*, 2016-Ohio-1486, ¶ 13 (12th Dist.); *State v. Williams*, 2023-Ohio-4667, ¶ 15 (1st Dist.). "An individual need not reside at a particular address in order to possess drugs found inside. A frequent visitor to a home can be found to have constructive possession of drugs found inside." *Fultz* at ¶ 23.

**{¶42}** Here, the State presented testimony that Madaris frequently slept overnight in the apartment and was the only person present in the home when the warrant was executed. When the search began, Madaris was in the bedroom and was arrested in the hallway outside of the bedroom. The drugs were located in that bedroom, some on the TV stand, in plain view, and some under the only bed in the bedroom. A digital scale and a bag of sugar were also in plain view in the bedroom. Madaris's boots and clothing were found in the bedroom with the drugs.

**{¶43}** Text messages revealed that Madaris intended to sell drugs that morning to a person who was a block and a half from Alvina. Later that day, the same individual texted Madaris, "You never hit me up tonight, Yo. What's up?" A text Madaris sent on December 20 indicated he "got some new shit in." Although Madaris attempted to distance himself from the fentanyl found in the home, he admitted to the lead investigator that he purchased fentanyl every other day from a certain individual.

**{¶44}** Viewed in a light most favorable to the State, the evidence supported a finding that Madaris constructively possessed the drugs. *See Fultz*, 2016-Ohio-1486, at ¶ 23 (1st Dist.) ("The discovery of the drugs and drug paraphernalia in the small bedroom shows they were readily accessible and in close proximity to appellant, and thus, constitutes circumstantial evidence appellant was in constructive possession of

them."); *State v. Reye*, 2016-Ohio-3495, 22 (9th Dist.) ("State offered sufficient evidence to establish Reye's constructive possession of the seized marijuana. Officer Neff indicated that he seized marijuana from Reye's bedroom and that some of it was stored in a Tupperware container underneath the bed.").

{¶45} Madaris challenges the weight of the evidence but does not make any argument regarding how the jury lost its way, other than arguing constructive possession was not proven. Accordingly, we cannot find the factfinder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

{¶46} We overrule the third and fourth assignments of error.

### Ineffective Assistance of Counsel

{¶47} In his fifth assignment of error, Madaris claims that he received the ineffective assistance of counsel when counsel elicited testimony during trial that had been excluded after a hearing on his motion in limine.

{¶48} To establish ineffective assistance of counsel, an accused must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the accused. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A defendant is prejudiced by counsel's performance if there is a reasonable probability that the outcome of the proceedings would have been different but for the complained-of conduct. *Id.* at 694.

{¶49} The trial court had excluded any "references to a drug transaction investigation prompted by non-testifying confidential informant and surveillance regarding same." While questioning the lead detective, counsel asked why none of the alleged evidence of the controlled buys was submitted during the trial or to the judge who issued the search warrant.

**{¶50}** The intent of counsel's questioning was to undermine the lead investigator's credibility and point out to the jury the lack of evidence of trafficking in this case compared to the alleged evidence of the controlled buys. During closing arguments, counsel discussed how uncomfortable the lead detective was when questioned about the investigation prior to the search and the warrant affidavit. Counsel further argued that the jurors should trust, but verify, and the State presented no evidence of these alleged transactions.

**{¶51}** Counsel's questioning about the CI transactions was trial strategy designed to undermine the credibility of the lead investigator, the investigation, and the lack of evidence of trafficking. This court will not second-guess trial counsel's strategy decisions because trial strategy, even debatable strategy, is not a basis for finding ineffective assistance of counsel. *See State v. Conway*, 2006-Ohio-2815, ¶ 101. ("The scope of cross-examination falls within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel."). Moreover, Madaris cannot establish prejudice because the jury acquitted him of the trafficking charges.

**{¶52}** Accordingly, we overrule the fifth assignment of error.

## Conclusion

**{¶53}** Having overruled Madaris's five assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

**NESTOR** and **MOORE, JJ.,** concur.